McFarland and others *vs.* The Bank of the State.

The notes of the Bank of the State of Arkansas and its branches, are not bills of credit, within the meaning of the Federal Constitution.

To constitute a good plea of usury, the pleader must aver a corrupt intent.

It is no error to disregard a plea of non est factum, not sworn to.

The 1st and 5th sections of chap. 80, of the Revised Statutes, as printed, which are declared to be the law of the land, by act of 14th December, 1838, put in operation by proclamation of the Governor, issued in pursuance of that act, on the 20th March, 1839, do not repeal the acts of 3d March and 10th December, 1838, fixing the rate of interest to be taken by the Bank.

It is a universal rule in construing statutes, and a settled maxim of the common law, that all acts passed upon the same subject, or *in pari materia*, must be taken and construed together, and made to stand, if capable of being reconciled.

The *general* law in regard to interest does not apply to cases not within its meaning or reason, nor repeal a special law passed at the same session, applicable to a particular corporation.

This was an action of debt, determined in the Independence Circuit Court, in August, 1841, before the Hon. Thomas Johnson, one of the Circuit Judges. Declaration on a bond executed to the Bank of the State of Arkansas, on the 28th of April, 1840, due at six months.

The defendants pleaded, first, non est factum, not sworn to; second, that the bond was executed for a loan of the notes of the Bank, and that these notes were *bills* of credit; and third, usury, without averring any corrupt intent. Demurrers to the second and third pleas sustained, and judgment signed by the plaintiff, disregarding the first plea. The judgment was rendered for the debt, and interest at 10 per cent. from the time it became due.

All the questions raised in the case were decided in cases previously reported, except as to the right of the Bank to any higher rate of interest than six per cent., no rate being expressed in the instrument sued on.

The Bank of the State has no stockholders. The charter was passed on the second day of November, 1836. By it the Bank was authorized to take in advance, six, seven, and eight per centum per annum, on notes having certain times to run. By the acts of March 3d and December 10, 1838, she was authorized to do the same, with

some slight variations as to the times the notes were to run. But on the 13th of December, 1838, subsequent to the passage of the last of these special acts, the Legislature enacted that the Revised Code, *as printed*, should be, and it was thereby declared to be, *the law of the land*, and that it should be in force when the Governor should issue his proclamation to that effect, which he did on the 20th of March, 1839. This Revised Code provided, that no person or corporation should directly or indirectly take or receive, in money, goods, or things in action, or in any other manner, any greater sum or value, for the loan or forbearance of money, than was therein prescribed; and made all notes, &c., void, wherein or whereby such greater rate was taken or reserved. The rate so fixed was six per centum per annum, allowing the parties to stipulate *in writing*, for a higher rate, not exceeding ten per centum. This portion of the Revised Code was still in force when the bond in this case was made, and no rate of interest was stipulated in it.

*Pike*, for the plaintiffs in error:

The provisions in the Revised Statutes, prohibiting the taking of any greater rate of interest than six per cent., unless it is expressed in the contract, became *the law of the land*, by broad, unqualified enactment, of the 20th of March, 1839, by virtue of the act of Dec. 14, 1838, and consequently repealed the act of Dec. 10, 1838. *Pamph. act of* 1838, *pp.* 11, 27.

An *affirmative* statute does not repeal a precedent affirmative statute; and, if the substance be such that both may stand together, they have a concurrent efficacy. 11 *Co.* 636. *But, if the latter be contrary to the former, it amounts to a repeal of the former;* for it is a general principle, that *leges posteriores priores contrarias abrogant. Dwarris,* 638. *Rex vs. Carter,* 4 *Burr,* 2026.

An act of Parliament may be repealed by the express words of a subsequent statute, or by implication. *id.* 638, 673. 11 *Co.* 63, *a.* *Com. vs. Crowley,* 1 *Ashmead,* 173. 3 *Bibb,* 181. *Heyden vs. Carroll,* 3 *Ridg.* 599.

But this is a *negative* statute: " No person or corporation shall; di-

rectly or indirectly, take," like that of Marlbridge, "*non ideo punia-tur Dominus*," or *Magna Charta*, "*nullus copiatur aut imprisonetur*." If a subsequent statute, contrary to a former, have negative words, it shall be a repeal of the former; and a negative statute so binds the common law, that a man cannot afterwads have recourse to the latter. *Dwar.* 639.

It is said that an act of Parliament cannot be altered or repealed in the same session at which it was passed, unless there be a clause inserted, expressly reserving a power to do so. *Dwar.* 673. But this was because, in England, every act had relation to the first day of the session. It is not so in the United States. 1 *Lev.* 91. *Atto. Gen. vs. Panter,* 6 *Bro. P. C.* 553. *Latless vs. Holmes,* 4 *T. R.* 660. *Perkins vs. Perkins,* 7 *Conn.* 558. *Matthews vs. Zane,* 7 *Wheat,* 104. *The Brig Ann,* 1 *Gall.* 62. *Goodsell et al. vs. Boynton et al.,* 1 *Scam. R.* 555.

An act of the Legislature can be repealed at the same session at which it was passed. *Peyton vs. Moseley,* 3 *Mon.* 80.

It is said that a later statute, which is general, does not abrogate a former, which is particular. *Dwar.* 674. But the instance given there is misquoted, and does not sustain the position. The *true* doctrine goes only to this extent, that a later statute, *in the affirmative,* shall not take away a former act; and *eo potins,* if the former be particular and the latter general. *Gregory's case,* 6 *Co.* 20. See *Gage vs. Carrier,* 4 *Pick.* 299.

It is true, the law does not favor repeals, by implication, unless the repugnance is quite plain; unless there is a contrariety or repugnancy in them. *Dwar.* 674. *Dore & Gray,* 2 *T. R.* 365. 11 *Co.* 63. *Dyer,* 347. 15 *East,* 377. *Thornby vs. Fleetwood,* 10 *Mod.* 118.

Acts of Parliament, established with such gravity, wisdom, and universal consent of the whole realm, for the advancement of the commonwealth, they ought not, *by any constrained construction out of the general and ambiguous* words of a subsequent act, to be abrogated. *Dr. Foster's case,* 11 *Co.* 63. But, *if they are contrary in matter,* especially if the latter is *negative,* the former is abrogated. *id., Saul vs. His Creditors,* 5 *Mart. N. S.* 575. *Gaylis' Heirs vs. Williams,* 7

*Louis. R.* 166. *Com. vs. Crowley,* 1 *Ashm.* 179. *Procter vs. New-hall,* 17 *Mass.* 92. *Pease vs. Whitney et al.,* 5 *Mass.* 386.

If the latter part of a single statute is repugnant to the former part thereof, it shall stand, and, so far as it is repugnant, be a repeal of the former part, because it was last agreed to by the makers of the statute. *Dwar.* 675. *Fitzgib.* 195.

It is true, that the great object of the rules and maxims of interpretation is, to discover the true intention of the law, and whenever that intention can be indubitably ascertained, courts are bound to give it effect, whatever may be their opinion of its wisdom or policy. That the real intention, when ascertained, will always prevail over the literal sense of terms. *Pray vs. Edie,* 1 *T. R.* 313. 11 *Co.* 73. That whenever the intention can be discovered, it ought to be followed in a course consonant to reason and discretion. *Plowden,* 202. 11 *Mod.* 161. 1 *Show.* 491. That a thing which is *in* the letter, is not within the statute, unless it be within the intention of the matter. *Bac. Ab. Tit., Statute* 1.

But that *intention* is primarily to be discovered from the *words.* It is only where the words are not explicit, that the intention is to be arrived at from the occasion and necessity of the law. It is not true, as Plowden lays it down, that the best way to form a right judgment whether a case be within the equity of a statute, is to suppose the law-maker present, and that you have asked him the question, did you intend to comprehend this case; and that you give such answer as you suppose that he, being an upright and reasonable man, would have given. *Eyston vs. Studd, Plowd.* 467. *Dwar.* 720.

Though the intention is to be explored, yet the construction must be such as is warranted by, or at least not repugnant to, the words of the act. Judges must not, in order to give effect to what they may *suppose* to be the intention of the Legislature, put upon the provisions of a statute a construction not supported by the words, *though the consequence should be to defeat the objects of the act. Rex vs. Stoke Damerel,* 7 *B. & C.* 569. *Opinion of Justices,* 7 *Mass.* 523.

Enlightened judges have long lamented the too frequent departure from the plain and obvious meaning of the words of the act, and hold it much the safer course to adhere to the *words,* construed in their

plain and ordinary import, than to enter into any inquiry as to the supposed intention of the parties who framed the act.   *Rex vs. Inhab. of Great Bentley,* 10 B. & C. 527.   *Rex vs. Barham,* 8 B. & C. 104. If the words go beyond the intention, the Legislature must make the alteration.   *Notley vs. Buck,* 8 B. & C. 164.   It is safer to adopt what the Legislature *have* said, than to suppose what they *meant* to say.   1 T. R. 52.   *Rex vs. Turney,* 2 B. & A. 522.   *Rex vs. Bray,* 3 M. & S. 20.   *Brandling & Barrington,* 6 B. & C. 475.   *Pennington vs. Coxe,* 2 *Cranch,* 33.   *U. S. vs. Fisher et al.,* 2 *Cranch,* 358. *Wilkinson vs. Leland et al.,* 2 *Peters,* 662.   *Clay vs. Hopkins,* 3 *Marsh.* 489.

A *casus omissus* can in no case be supplied by a court of law, for that would be to make laws.   1 T. R. 52.

Where the language of a statute is clear and unambiguous, the Court is bound to read it according to its usual and obvious signification, whatever may be their opinion of the expediency of the law.   If they should give it a strained construction, even from motives of public policy, and for the advancement of apparent justice in a particular case, they would be justly chargeable with a usurpation of power, and a violation of the constitution they are sworn to support; and it makes no difference in the controlling operation of the latter, that the one is a *general* and the other a *special* statute.   If the provisions in the two are repugnant, they cannot stand together.   *Gage vs. Currier,* 4 *Pick.* 399.   *Howe vs. Starkweather,* 17 *Mass.* 240.

Whenever a statute is intended to give a remedy against a wrong, to prevent fraud, tortions, usurpations, &c., the King or the government is bound by it.   So by acts for the advancement of religion or learning.   2 *Inst.* 681.   5 *Co.* 14, *b.*   If an act is general, and the government clearly included in the words, if it is to be made exempt, it must be by construction of law; and, in such case, such construction will be put upon the act as will suppress the mischief and advance the remedy.   The government cannot be made an instrument of wrong. *Megdalen College case,* 11 *Co.* 67.

And, if the special and the general statutes are to be construed together, the effect is the same.   In that case, the Bank could not take

more than six per cent. interest, *without providing for it in the body of the note.* If she omitted to do this, it was her own fault.

This question was also argued by *Hempstead & Johnson,* for the Bank, and the Reporter regrets that such a brief was not filed by them, as he is authorized, by the rule of the Court, to have published.

*By the Court,* Lacy, J. We deem it unnecessary to notice the two first questions raised upon the record, further than to remark, that it was held in the case of *McFarland et al. vs. The Bank of the State of Arkansas, ante,* that the issues of the notes of the Bank are not bills of credit, within the meaning of the Federal Constitution. And that, to constitute a good plea of usury, the party pleading it must aver a corrupt intent. It certainly cannot be contended that the Court below erred in disregarding a plea of *non est factum,* which is not sworn to.

The only remaining inquiry is, do the first and fifth sections of the 80th chapter of the Revised Statutes, as printed, which is declared to be the law of the land, by an act of the General Assembly of the 14th of December, 1838, put in operation by the proclamation of the Governor, issued in pursuance of its authority, on the 20th of March, 1839, repeal the acts of 3d of March and 10th of December, A. D. 1838, prescribing the rate of interest for the Bank of the State? By the Revised Code, it is declared, that " no person or corporation shall, directly or indirectly, take a higher rate of interest for the loan or forbearance of money, than six per centum per annum, unless it is so expressed in the writing," and then not exceeding ten per cent. The acts of the 3d of March and 10th of December, 1838, prescribe the rate of interest for the Bank, and fix it higher than six per cent., without requiring it to be expressed in the contract, and give ten per cent. per annum upon all bonds, bills, and notes, which shall not be paid upon maturity, or be protested, or upon which suits may be brought. The question now recurs: Does the general law of interest, as contained in the Revised Statutes, repeal the special law upon that subject, as fixed by the acts referred to? This question is one of ac-

knowledged magnitude, and the Court has met with no inconsiderable difficulty in arriving at a satisfactory conclusion. It has been well discussed by the repective counsel engaged, and in a manner worthy the importance of the principle involved.

It is a universal rule in the construction of statutes, whether public or private, founded alike in justice and sound policy, that all acts passed upon the same subject, *in pari materia*, must be taken and construed together, and made to stand, if they are capable of being reconciled. We know of no exception to the universality of this rule. Indeed, the principle may now be considered as a settled maxim of the common law. Its application to the statutes now under consideration, will test the question in the present case. The rule of interest, as prescribed in the Revised Code, may properly be denominated a *general law*, including all cases within its terms. It does not apply to cases not within the meaning or reason of the statute. The rate of interest, as prescribed by the acts of the 3d of March and 10th of December, may justly be termed a *special law*, having exclusive reference to the Bank. Now, do the provisions of the general law of interest repeal a special law of interest, as applicable alone to the Bank? They certainly do not do it by any express words or terms.

The Revised Statutes declare, that no person or corporation shall take a greater rate of interest than is contained in the act of the code. But it does not refer to the Bank of the State by name, or declare that that institution is embraced by the word corporation. Does it, then, do it by necessary implication, or by any just interpretation of that term? The term "Corporation," if it stood alone, is a word of general signification, and would unquestionably embrace the case of the Bank. But is not its meaning restricted and confined to a more limited sense, and applying only to such corporations, other than the Bank, that were then in being, or might afterwards be created. There were many corporations besides the State and Real Estate Bank; for instance, the Little Rock Manufacturing & Mining Company; Little Rock Academy; Napoleon Public School and Church; numerous turnpike companies, &c.

To most, if not all of these corporations, was given, by the express provisions of their charters, the power of acquiring, holding, and

McFarland et al. *vs.* The State Bank.

transmitting property, and making contracts. And the corporation of the Fayetteville Female Academy, by the third section of its charter, had express authority given it *to loan money on interest.* The term " Corporation," then, is justly applicable to all these corporate bodies, and hence the propriety of the term as used in the Revised Statutes. It is clear, that the term could not embrace the cases of interest of the Real Estate Bank, because the Legislature was incompetent to prescribe any other rule upon that subject, than was contained in the charter, without the assent of the stockholders; the charter being a contract between the State and the corporators. That they did not intend to apply the term corporation to the Bank of the State, is, we apprehend, pretty clear and certain. Had that been the intention, would they have left its repeal to mere implication, and that, too, in a case where the State was the sole corporator, and its honor and its means pledged for the redemption of the capital stock?

This view of the case is strengthened, by considering that both the general and special law of interest were before the Legislature at one and the same time, and that there were only four days between their respective dates. The proximity of these dates raises a violent presumption, if it does not amount to full proof, that the term "Corporation," used in the general law of interest, was never intended to embrace or apply to the transactions of the Bank. The rate of interest that was to govern that corporation, was fixed by special and particular acts, that were considered maturely, and separately passed; and the latter act upon the subject, might almost be said to reach the very verge of the date of the general law upon the subject, or run into its provisions in point of time. This idea receives an additional confirmation from the known and well established fact, that the laws of the Revised Code were passed in one collected body, as a code, and not in separate and distinct acts. This grew out of the errors and imperfections of the original rolls, as they appeared in the office of the Secretary of State, and hence the act of the 14th December, 1838, made the *Revised Code, as printed,* the law of the land. Having passed in this manner, is it reasonable to suppose that the Legislature could have intended, when using general words in a general

53

law, to repeal the provisions of special and particular acts not falling within the reason or spirit of the rule.

Besides, if this was the case, it must have been apparent to all that the Bank would be compelled to adopt the rate of interest as specified by her charter, and the amendatory acts engrafted upon it for a given time, until the Governor issued his proclamation; which it, was reasonable to presume could not take place before the lapse of several months. Such being the state of things, to suppose that the Legislature intended, by the term "Corporation," to include the Bank, would argue a want of foresight, and inconsistency in their proceedings, which this Court is not allowed to infer. Such a presumption would give the debtors to the Bank one rule of interest to govern their contracts, during a given period, and, in a short time thereafter, would furnish a wholly different rule upon the subject, and that, too, in a case of importance, affecting the rights and franchises of a public corporation owned entirely by the State.

We deem it unnecessary to pursue the subject further; and if we even entertained serious doubts upon the point, we would feel ourselves constrained to declare, that the first and fifth sections in the Revised Statutes, relating to the general law of interest, do not repeal, either by express words, or by necessary implication, the acts of the, 3d of March and 10th December, 1838. The magnitude of the mischief, and the manifest injustice of a contrary decision, if our judgment stood suspended upon the point, would incline the balance in favor of the construction we have put upon these acts.

Judgment affirmed.