Mary Katherine VANDIVER et al *v.*WASHINGTON
COUNTY, ARKANSAS et al

81-146                                    628 S.W. 2d 1

Supreme Court of Arkansas
Opinion delivered January 18, 1982
[Rehearing denied March 8, 1982.]*

---

*HICKMAN, J., would grant the petition.

*Boyce R. Davis,* for appellants.

*Kim Smith,* Pros. Atty.; *James M. McCord,* City Atty; and *James B. Blair,* of *Blair, Cypert, Waters & Roy,* for appellees.

STEELE HAYS, Justice. Appellants are four householders of Washington County residing within an area affected by Ordinance No. 80-5, adopted by the Washington County Quorum Court on February 14, 1980. The ordinance imposes an annual fee of $15.00 on each household (except those served by another company) to meet the cost of providing emergency medical services to the area. The ordinance was submitted to a referendum election and was ratified by a vote of 3,437 to 1,807.

After ratification Washington County entered into a contract with Central Emergency Medical Service, Inc., leasing ambulances and equipment to the corporation, which agreed to provide continuous emergency medical services to the area. The county provided the funds necessary for CEMS to operate under an approved budget. On termination or default, the leased equipment reverted to the county.

Appellants filed suit challenging the constitutionality of the ordinance, the legality of the $15.00 fee, seeking a restraining order against further collections and a refund of all amounts collected. Over objection from appellants, CEMS and the city of Fayetteville were permitted to intervene.

The case was heard on a stipulation of facts and on cross-motions for summary judgment. The chancellor held the annual levy was a fee for services rather than a tax, that the ordinance did not violate the Constitution of Arkansas by lending the credit of the county, nor operate to deny appellants equal protection of the law, or take property without due process, but that the ordinance was not adopted in accordance with Act 51 of 1979 (Ark. Stat. Ann. § 82-3410 et seq.) and, hence, invalid. He declined to order a refund of undistributed fees totaling $56,326.40. Both sides appeal, alleging a number of errors. We affirm on appeal and reverse on cross-appeal.

It should first be mentioned that appellees have challenged appellants' abstract under Rule 9. The abstract is seriously inadequate. Without the supplemental abstract, it would be wholly impossible to follow the arguments without consulting the single record, which greatly hampers review. When the abstract omits the ordinance under attack, the chancellor's memorandum opinion, the final order, all exhibits, and portions of pertinent testimony, it becomes impossible to understand and weigh the arguments so that they may be fairly decided. On request, appellees' time and cost in supplying a supplemental abstract will be allowed.

Before considering substantive issues we take up the procedural argument that the chancellor erred in permitting interventions by the city of Fayetteville and CEMS under A. Civ. P. Rule 24 (b). He found the intervenors had a vital interest to protect and had questions of law and fact in common with the primary litigation. Permissive intervention under Rule 24 (b) is discretionary and subject to reversal only upon a showing of abuse. *Pulaski County Board of Equalization* v. *American Republic Life Insurance Co.*, 233 Ark. 124, 342 S.W. 2d 660 (1961). We find no showing of the wrongful exercise of discretion; indeed, the interest of the intervenors in the litigation seems clear.

Next, we consider the argument of cross-appellants that the chancellor erred in holding (1) that Ordinance No. 80-5 was improperly enacted and (2) that there was no substantial compliance with Act 51. We agree the chancellor erred and must be reversed. Two recent acts are relevant to the issue: Act 742 of 1977, the "Arkansas County Government Code" enacted pursuant to Amendment No. 55, and Act 51 of 1979, which dealt more specifically with emergency medical services and imposed procedures not appearing in Act 742. The basic questions raised are under which of the two acts could Ordinance No. 80-5 be enacted, and whether the procedures followed by the Quorum Court in adopting the ordinance were sufficient to meet the requirements of those acts.

The Quorum Court originally elected to proceed under

Act 742, however, approval of the proposal was submitted to a referendum petition giving some indication of an intent to proceed under Act 51.

Relying on a general principle of statutory construction, the chancellor held the specific grant of authority under Act 51 was controlling over the general grant of authority under Act 742 and consequently the procedures and requirements of Act 51 must be met.

The chancellor correctly found Act 742 (Ark. Stat. Ann. § 17-3801 et seq.) gives the Quorum Court authority to provide for emergency medical services but held that the authority created under Act 742 is limited by the procedural requirements of Act 51. Namely, the Quorum Court must set a date for a public hearing on the question and cause notice of the time and place of the hearing to be published in a newspaper of general circulation in the county or in the area proposed to be served. Further, the ordinance "shall specifically describe the area to be included within the system, describe the services to be provided the residents of the area and shall specifically state the estimated cost of the services. . . . " (Section 82-3411.) The chancellor found the evidence insufficient to satisfy the requirements of a public hearing, publication of notice, and found the ordinance did not sufficiently describe the services to be provided.

Cross-appellants contend Act 742 and Act 51 provide *alternative* procedures for establishing emergency medical services and the Quorum Court elected to proceed under Act 742. Their argument is bolstered in the light of the language of Section 7 of Act 51, which provides:

> The procedures prescribed herein for the establishment of an emergency medical services program and the furnishing of emergency medical services *shall be supplemental to and shall not be construed to repeal or modify any law presently in existence* relating to the furnishing of such services. (Emphasis supplied.)

Curiously, Section 6 of Act 51 specifically imposes the same notice of hearing and referendum requirements to enact an

ordinance levying service charges for any emergency medical services programs established *prior* to the act and Section 8 states that all laws and parts of laws in conflict are repealed.

A universal rule in construing statutes, and a settled maxim of the common law, is that all acts passed upon the same subject are *in pari materia,* and must be taken and construed together and made to stand if capable of being reconciled. *McFarland* v. *Bank of State,* 4 Ark. 410, 4 Pike 410 (1842); *Morrison* v. *State,* 40 Ark. 48 (1883); *Sargent* v. *Cole,* 269 Ark. 121, 598 S.W. 2d 749 (1980). Interpreting Act 51 in harmony with Act 742 is difficult, at best, and can be accomplished only at the expense of plausibility. Under Act 51 the Quorum Court must set a date for a public hearing and publish notice of the time and place, whereas under Act 742 no such requirements are imposed. If the acts were intended to provide alternate methods, then Act 51 would be effectively rendered a nullity, as there would be no reason for a Quorum Court to choose the more arduous route required by Act 51 when it could accomplish the same result more easily under Act 742. Where statutes cannot be reconciled through interpretation, then construction is the proper course. The cardinal rule in construing statutes is said to be that it is the duty of the court to ascertain and give effect to the intention of the Legislature. We believe the chancellor was correct in finding that Act 742 is governed by the requirements of Act 51, as this is the only logical interpretation that gives effect to both acts. *John May Company* v. *McCastlain,* 244 Ark. 495, 426 S.W. 2d 158 (1968); *Perry County* v. *House,* 196 Ark. 317, 117 S.W. 2d 342 (1938).

Cross-appellants also argue that the procedures followed by the Quorum Court substantially complied with the hearing, notice and referendum requirements of Act 51 and that the referendum election at which Ordinance No. 80-5 was approved cured any procedural defects. The argument is convincing. In enacting the ordinance, the Quorum Court (1) set a date for public hearings on the question of providing emergency medical services to a designated area of the county, (2) published notice of dates, time and place of each hearing in a newspaper of general

circulation in the county and the area proposed to be served, (3) gave all interested parties residing in the designated area an opportunity to appear and be heard for or against the proposal, and (4) described the area to be included (six specified school districts), the services to be provided (emergency medical services, defined in Act 51 as "the transporting of the acutely ill or injured and the medical care provided to such person prior to arrival at a medical facility"), the estimated cost ($15.00 per household) and the proposed method of financing (a fee of $15.00 per household).

On November 8, 1979, the Quorum Court set two dates for public hearings: December 4, 1979, in West Fork and December 6, 1979, in Fayetteville. Notice of the dates, time and place of these hearings was publicized through frequent newspaper articles in three of the largest newspapers of general circulation in the county; the hearings were well attended. From November 9, 1979, to June 22, 1980, no less than 40 prominent news articles appeared informing the public of the proposal to provide emergency medical services to those parts of Washington County no longer receiving services. On June 24, 1980, the ordinance was approved by a decisive vote: 3,437 for to 1,807 against. Certainly the thorough news treatment given the ordinance afforded the electors actual notice of what they were voting on.

In *Hildreth v. Taylor,* 117 Ark. 465, 175 S.W. 2d 40 (1915), we adopted the rule of substantial rather than strict compliance in connection with requirements of providing notice in a newspaper on a referendum of a constitutional amendment, stating:

> . . . (A) literal compliance is not required, and that a failure to publish the notice within the time specified does not itself prevent the people from adopting a measure at an election as specified in the Constitution. In order to defeat the submission, it must at least be shown that the omission to publish amounted to such a radical disregard of the requirements imposed by the

legislature that it probably affected the result of the election. At 471.

Section 3 of Act 51 directs that "the ordinance shall be subject to the referendum which may be exercised in the manner prescribed in Amendment 7 to the Constitution of Arkansas." On several occasions this court has employed a liberal attitude toward referendums in meeting the requirements in Amendment 7: *Johnson & Rosenkrantz v. Munger,* 260 Ark. 613, 542 S.W. 2d 753 (1976); *Coleman v. Sherrill,* 189 Ark. 843, 75 S.W. 2d 248 (1934); *Reeves v. Smith,* 190 Ark. 213, 78 S.W. 2d 72 (1935).

In *Leigh v. Hall,* 232 Ark. 558, 339 S.W. 2d 104 (1960), we said, "This court is definitely committed to the proposition that Amendment Seven should be liberally construed to effectuate its purpose."

Where the voters have overwhelmingly approved a county ordinance whose ballot title contains sufficient information to enable them to cast their ballots with a fair understanding of the issues presented, we deem it our duty to sustain the election. *Becker v. Riviere,* 270 Ark. 219, 604 S.W. 2d 255 (1980). In *Orr v. Carpenter,* 222 Ark. 716, 262 S.W. 2d 280 (1953), we declared the approved rule to be:

All provisions of the election law are mandatory, if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to affect an obstruction of the free and intelligent casting of the vote or to the ascertainment of the result, or unless the provision affects an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of the election, or that its omission shall render it void.

The chancellor's holding that Ordinance No. 80-5 is invalid because of procedural defects is contrary to the general rule that "after the election shall have been held, general provisions must yield in order to support the result

of the election." *McKenzie* v. *City of Dewitt*, 196 Ark. 1115, at 1118, 121 S.W. 2d 71 (1938); *Johnson & Rosenkrantz* v. *Munger, supra*. In *Beene* v. *Hutto*, 192 Ark. 848, 96 S.W. 2d 485 (1936), we held that insufficiency of a petition to initiate local law was of no consequence after the question was voted on and passed. It is the duty of the Court "to sustain elections which have resulted in a full and fair expression of the public will." *Chaney* v. *Bryant*, 259 Ark. 294, 532 S.W. 2d 741 (1976). Moreover, the chancellor's memorandum opinion (T. 107) incorrectly placed the burden of proving the sufficiency of the public hearing and publication of notice of the hearing on the proponents of the ordinance rather than on the opponents, where it rightfully lay. *Delony* v. *Rucker*, 227 Ark. 869, 302 S.W. 2d 287 (1957); *City of Little Rock* v. *Linn*, 245 Ark. 260, 432 S.W. 2d 455 (1968). It is incumbent on those attacking the validity of a statute to show its invalidity. *Henderson* v. *Russell*, 267 Ark. 140, 589 S.W. 2d 565 (1979); *Pierce* v. *City of Hope*, 127 Ark. 38, 191 S.W. 405 (1917).

Appellants urge us to hold that substantial compliance was not pleaded and is being raised for the first time on appeal. But we decline. Whether the pleadings implicitly raised the theory of substantial compliance need not be decided, as it was expressly argued below and, therefore, it cannot be said the issue was not first presented to the trial court. (Pages 76 and 112 of the record.)

For affirmance, appellants contend that the agreement between CEMS and the Washington County Quorum Court makes Ordinance No. 80-5 unconstitutional as it operates to lend the credit of the county to a non-profit corporation and the chancellor erred in refusing to consider that argument. We think the chancellor was entirely correct in holding that the issue before him was the validity of the ordinance, rather than the agreement, and we readily agree with him that the ordinance itself reveals no constitutional flaw; in fact, no serious argument is made on that score. Appellants argue that when the ordinance and the agreement are construed together the credit of the county is affected and that *both* were before the court. It is true the agreement was part of the written stipulation of the parties, but it is clear its intro-

duction was limited to show CEMS' interest in the litigation and not in connection with the substantial issues of constitutionality. At a pretrial hearing counsel for appellants argued the agreement was not in issue (T. 163) and after intervention was ordered counsel for appellants and CEMS expressly stipulated that the precedent would prohibit "raising any issue based on the contract between CEMS and Washington County." (T. 178.)

Appellants next contend that the chancellor erred in declaring the levy imposed by the ordinance to be a fee and not a tax. The chancellor relied on *Holman* v. *City of Dierks,* 217 Ark. 677, 233 S.W. 2d 392 (1950), where it was held that the imposition of an annual sanitation tax of $4.00 on each household and business to pay the cost of periodic spraying with insecticides was a charge for service and not a tax, citing Cooley on Taxation (3rd Ed.), p. 5. See also *Housing Authority of Blytheville* v. *City of Blytheville,* 228 Ark. 736, 310 S.W. 2d 222 (1958). We can see no material distinction between this case and *Holman* and we believe the *Holman* decision governs. The levy is imposed for a particular purpose, it is for a service, the funds are separately allocated to pay for that service, and householders similarly served by another provider are relieved of the levy. We believe the chancellor was correct.

We are also urged to reverse the chancellor for refusing to order a refund of the undisbursed fees collected under the ordinance and for refusing to allow testimony that the fees were paid under protest, but as we are upholding the validity of Ordinance No. 80-5 discussion of these points is needless. The chancellor's award of an attorney's fee pursuant to Ark. Stat. Ann. § 84-4601 (Repl. 1980) is reversed. *Munson* v. *Abbott,* 269 Ark. 441, 602 S.W. 2d 649 (1980).

Appellants' request for an attorney's fee and costs pursuant to Rule 9 (e) (1) and Rule 24 (d) is denied.

Affirmed on direct appeal, reversed on cross-appeal and remanded for the entry of an order not inconsistent with this opinion.