The Honorable George Hopkins State Senator Route 1, Box 488 Donaldson, Arkansas 71941
Dear Senator Hopkins:
This is in response to your request for an opinion on the following questions:
 1. If, in the terms and conditions specified in a bid to provide ambulance service, the County agrees that said bid winner shall have an exclusive agreement to provide all emergency and non-emergency ambulance service in the area currently served by the present ambulance service, would this agreement constitute a franchise; and, if so, would this exclude the rights of a private enterprise, namely Twin Rivers Medical Center, of continuing the operation of their current non-emergency ambulance service?
 2. In order to insure the bid winner an exclusive agreement, what is the legality of a County ordinance requiring all health care vehicles, operating within the boundaries of the County, having to obtain a County license to operate said vehicle, and the operator, in order to obtain said license, would have to prove his service would benefit, rather than hinder the operation of the County's bid winner?
While the Invitation to Bid does not clearly indicate that the bid winner will obtain a "franchise," it could be concluded that the agreement does constitute a franchise to the extent that it operates to grant a privilege to offer services within a particular territory. However, it must be noted that this question ultimately demands construction of what in essence amounts to a contract between the county and the bid winner. This is a factual question which the Attorney General is not in a position to resolve.
Of perhaps more significance is your question with respect to the agreement's affect on private enterprise since an issue may arise with respect to the county's authority to grant an exclusive franchise in this instance, if indeed that is what the agreement purports to accomplish. It may be contended that the county's award of an exclusive franchise is in restraint of trade and creates a monopoly in violation of the Sherman Antitrust Act.15 U.S.C. § 1, 2.
One potential defense to an antitrust claim centers upon the "state action immunity" doctrine. Parker v. Brown, 317 U.S. 341
(1943). The county would, in order to claim an exemption under this doctrine, be required to demonstrate that it is authorized pursuant to State policy to displace competition in this area with regulation or monopoly public service. Id. The state action immunity issue is analyzed in two steps. First, the legislature must have authorized the county's challenged activity; and second, the legislature must have intended to displace competition. Scott v. City of Sioux City, 736 F.2d 1207, 1211 (8th Cir. 1984). It has been stated that the state policy to displace competition can be inferred ". . . if the challenged restraint is a necessary and reasonable consequence of engaging in the authorized activity." Id.; citations omitted.
Although the county's legislative authority clearly extends to providing for ambulance services under A.C.A. 14-14-802(b)(2)(D), it appears that the legislature has not expressly authorized counties to grant exclusive franchises for non-emergency medical services. It must therefore be determined whether legislative intent to displace competition can be inferred.
It is my opinion, based upon a review of the relevant statutory schemes, that a court would be unwilling in this instance to conclude that the displacement of competition is a "necessary and reasonable consequence of engaging in the authorized activity." Gold Cross Ambulance v. City of Kansas City, 705 F.2d 1005, 1013
(8th Cir. 1983). It must be initially recognized that the county's specific grant of authority to establish medical services under A.C.A. 20-13-301 et seq., extends to emergency services. It is also significant to note that the broad authority granted to certain first class cities under the Municipal Ambulance Licensing Act, A.C.A. 14-266-101 et seq., regarding emergency and non-emergency medical services does not extend to counties. It may thus be concluded that the legislative scheme does not contemplate the county's displacement of competition with regulation in the area of non-emergency ambulance service. A contrary result was reached in L H Sanitation v. Lake City Sanitation, 769 F.2d 517 (8th Cir. 1984) with respect to solid waste management and disposal. However, that decision was based in part upon the court's determination that ". . . Arkansas law recognizes the validity of a municipal grant of a private monopoly in solid waste disposal." Id. at 522, citing Guerin v. City of Little Rock, 203 Ark. 103, 105-106, 155 S.W.2d 719 (1941). We are aware of no statutory or case law authority for a county's grant of a private monopoly in non-emergency ambulance service. It may thus be concluded in response to your first question that an attempt in this instance to preclude private operation of a non-emergency ambulance service could in all likelihood be successfully challenged under the Sherman Antitrust Act.
The case of Vandiver v. Washington County, 274 Ark. 561,628 S.W.2d 1 (1982) should, finally, be noted in response to this question. It was determined in that case that the quorum court's authority to provide for emergency medical services under Act 741 of 1977, codified as A.C.A. 14-14-801 et seq., is limited by the procedural requirements of Act 51 of 1979, codified as A.C.A.20-13-301 et seq. It thus appears that the county must, as an initial matter, follow Act 51 in providing for this emergency medical service.
Your second question dictates a review of the particular licensing requirements to assess the probable outcome of constitutional challenges. An equal protection argument may be premised upon requirements imposed for operating other similar vehicles. This argument may be countered with the assertion that the ordinance is designed to accomplish a legitimate state purpose, that is, the protection of public health and safety. However, there must also be a showing that the license requirement is rationally related to this governmental purpose. See, e.g., J. W. Black Lumber Company v. Ark. Dept. of Pollution, 290 Ark. 170, 717 S.W.2d 807 (1986). The ordinance may be constitutionally suspect if the license requirement is imposed only for purposes of protecting the bid winner.
It should also be noted that "[t]he law recognizes a point at which regulation so restricts the use of property that it exceeds mere regulation and becomes a taking." J. W. Black Lumber Company, supra, 290 Ark. at 174. The license requirement would, in that instance, be subject to challenge under the Fifth Amendment to the United States Constitution and Article 2, Section 22 of the Arkansas Constitution. The United States Supreme Court has stated the following in this regard:
 Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts. The greatest weight is given to the judgment of the legislature, but it always is open to interested parties to contend that the legislature has gone beyond its constitutional power.
Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413 (1922).
It becomes apparent that your second question can only be resolved in the context of particular factual arguments, based upon a review of the specific license requirements. However, we hope that the foregoing offers some general guidance in considering potential constitutional challenges.
The Attorney General is required under A.C.A. 25-16-706 to provide his opinion to the General Assembly upon the constitutionality of any proposed bill. He is precluded, however, from engaging in the private practice of law. A.C.A. 25-16-701. Therefore, this opinion is not provided for the benefit of private third parties, nor should it be relied upon or offered for that purpose.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.