WEST WASHINGTON COUNTY EMERGENCY
MEDICAL SERVICES, Emery Phillips, Sidney Britten,
Glinda Kirk, E.E. Newell, Douglas R. Moore, Kathy
Struble, Norma Tomboulian and Bob Hasha *v.*
WASHINGTON COUNTY

92-1267                                              852 S.W.2d 137

Supreme Court of Arkansas
Opinion delivered May 3, 1993

*Prior, Barry, Smith, Karber & Alford*, by: *Gregory T. Karber*, for appellants.

*George E. Butler, Jr.*, for appellee, Washington County.

Davis, Cox & Wright, by: *Wm. Jackson Butt II* and *Tim Howell*, for appellee Central Emergency Medical Services.

DAVID NEWBERN, Justice. This is an illegal exaction case. West Washington County Emergency Medical Services and eight individual taxpayers (referred to collectively as WWCEMS), sued Washington County seeking an injunction based on the general authority of Ark. Const. art. 16, § 13, which permits taxpayers to sue to protect inhabitants of a county against enforcement of an illegal exaction. Another emergency medical services provider, Central Emergency Medical Services (CEMS), was also made a defendant for the purpose of recovering tax monies it had received illegally.

The claim was that the County had illegally established an emergency medical service and thus misapplied County funds by contracting with and paying CEMS for providing the service. More specifically, it was contended by WWCEMS that the County had failed to comply with requirements, found in Ark. Code Ann. § 20-13-303 (Repl. 1991), that establishment of such a service be preceded by notice, public hearings, and referendum

of the establishing ordinance. The Chancellor held the Statute posing those requirements applied only when emergency medical services were to be financed by imposition of a service charge on potential users of the service or a separate millage assessment. As the services in this case were to be funded by a county sales tax, he concluded there had been no violation. We affirm the decision.

WWCEMS is a private, non-profit corporation which provided emergency medical services in western Washington County. It began operating in 1977. In 1980 Washington County helped establish Central Emergency Medical Services (CEMS), a private, non-profit corporation providing ambulance services authorized by County Ordinance #80-3 to operate in areas of the County not served by WWCEMS. Ordinance #80-5 provided for a per household service charge to be levied in the area of the County to be served by CEMS and a procedure for collection of the fee. In *Vandiver* v. *Washington County*, 274 Ark. 561, 628 S.W.2d 1 (1982), the legality of these ordinances was challenged, and we held the County had substantially complied with § 20-13-303 and thus CEMS had been properly established.

In March 1982 Washington County did away with the service charge financing for CEMS and contracted with both CEMS and WWCEMS, dividing the County between the two services, and paying each from the proceeds of a county-wide sales tax approved by the electorate. The tax and the plan to use part of the proceeds from it to pay for CEMS had been widely publicized prior to the election at which it was approved. The contracts with CEMS and WWCEMS continued in effect until sometime in 1988 when the County canceled with its contract with WWCEMS and expanded its contract with CEMS to have it service the whole County. There was no hearing and no voter approval of the extension of service by CEMS beyond the boundaries established in the 1980 Ordinance.

On appeal WWCEMS argues the Chancellor's decision is contrary to the statutory scheme for establishing an emergency medical service and contrary to our decision in the *Vandiver* case in which we held that the requirements of § 20-13-303 are mandatory. The County and CEMS argue the Statute does not apply, and if it does there has been substantial compliance, given the notice to the voters who approved the sales tax for the specific

purpose of financing county-wide emergency medical service.

In the *Vandiver* case we were concerned with establishment of an emergency medical service to be financed by a service charge rather than by a county-wide tax. It is apparent that the General Assembly intended the procedural requirements of § 20-13-303 apply to a county's establishment of an emergency medical service to be financed by such a service charge rather than by county-wide taxation. We reach that conclusion by reading other sections in Act 51 of 1979, of which § 20-13-303 was a part. That Act is now codified as Ark. Code Ann. §§ 20-13-301 through 20-13-307 (Repl. 1991).

Section 20-13-301 is the general provision of legislative intent, and it refers to authorization of counties to "provide emergency medical services for residents . . . and to provide for levying service charges upon residents . . . ." Section 20-13-305 deals with financing. It states the services "may be financed by service charges levied in the ordinance establishing the service." It does not refer to any other form of financing.

We do not depart from our decision in the *Vandiver* case that the general county powers law found in Ark. Code Ann. § 14-14-801 (1987) is circumscribed by § 20-13-303 when the method of financing a county emergency medical service is by service charge. We find, however, no reason to hold that a county may not establish an emergency medical service pursuant to § 14-14-801 which allows a county to levy taxes as provided by law, appropriate public funds for county expenses as provided by law, and provide for "any service . . . relating to county affairs." Section 14-14-802 (b)(2)(D) specifically gives county government authority to establish emergency ambulance service. WWCEMS contends "as provided by law" refers to § 20-13-303, but we disagree in view of our determination that the latter section is limited to cases in which a service charge is to be imposed.

Affirmed.