Valerie SALLEY *v.* CENTRAL ARKANSAS TRANSIT
AUTHORITY

96-630                                               934 S.W.2d 510

Supreme Court of Arkansas
Opinion delivered December 9, 1996

*Mays & Crutcher, P.A.*, by: *Richard L. Mays*, for appellant.

*J. Chris Bradley*, for appellee.

TOM GLAZE, Justice. Appellant Valerie Salley was a passenger in appellee Central Arkansas Transit Authority's (CAT's) bus when it collided with a car operated by an uninsured motorist. Salley subsequently filed suit against CAT, alleging that she had sustained injuries resulting from the collision and that CAT, as a common carrier, had a duty to carry uninsured motorist coverage or to be self-insured. CAT filed a motion for summary judgment, which the trial court granted, holding CAT is a governmental public transit system, and as such, the General Assembly specifically delimited its liability for negligence. Accordingly, the trial court held CAT was not a common carrier that had a duty to carry uninsured motorist

coverage. Salley brings this appeal from the trial court's summary judgment decision.

Salley, on appeal, restates her argument below that CAT is a public corporation established by Pulaski County and the municipalities of Little Rock, North Little Rock, Sherwood, Cammack Village, and Maumelle, and as a common carrier, CAT is statutorily required to carry uninsured motorist coverage or to self-insure its vehicles for collisions with uninsured motorists. In particular, Salley argues that CAT is a common carrier as that term is defined in Ark. Code Ann. § 23-16-301(a) (1987). That statute provides as follows:

> As used in this subchapter, unless the context otherwise requires, "common carrier," means any person, firm, or corporation which undertakes, either directly or indirectly, to transport members of the general public as passengers for compensation whether over regular or irregular routes.

Salley further submits that, in fitting the definition of common carrier, CAT, under Ark. Code Ann. § 23-16-302 (1987), is required to carry uninsured motorist liability insurance or become a self-insurer for the protection of its passengers and operators who are legally entitled to recover damages from uninsured motorists. To determine whether the General Assembly intended §§ 23-16-301—302 to include public transit systems requires our analysis of other relevant statutes as well. As this court has said on many prior occasions, a universal rule in construing statutes, and a settled maxim of the common law, is that all acts passed upon the same subject are *in pari materia*, and must be taken and construed together and made to stand if capable of being reconciled. *Vandiver* v. *Washington County*, 274 Ark. 561, 628 S.W.2d 1 (1980).

The relevant historical chronology begins with Act 347 of 1953 [Ark. Code Ann. §§ 27-19-101 *et seq.*] which established Arkansas's Motor Vehicle Safety Responsibility laws. Pertinent to the issue before us, Act 347 provided for suspension and security requirements for drivers of vehicles involved in an accident within the state, but it made those requirements inapplicable to drivers or owners of vehicles who have a liability policy or bond or who are self-insured.[1]

---

[1] *See* § 27-19-604 for other exceptions established under the Act.

The next relevant law bearing on the immunity issue before us concerns Act 165 of 1969 [now Ark. Code Ann. §§ 21-9-301—303 (Repl. 1996)] which declared all state subdivisions, including counties and municipal corporations, to be immune from tort liability. The Act, however, required all political subdivisions to carry liability insurance on all their motor vehicles.[2] And following Act 165's enactment, the General Assembly passed Act 893 of 1975 [now Ark. Code Ann. §§ 23-16-301—302 (1987)]. These are the statutory provisions Salley largely relies upon in her appeal. As previously mentioned, it was Act 893 that defined "common carrier" and required such carriers to carry uninsured motorists liability insurance.

Finally, the next major legislation we need to consider is that which created the Public Transit System, Act 424 of 1981 [now Ark.Code Ann. §§ 14-334-101 et seq. (1987)]. Act 424 is the authority under which CAT was established. It generally defines a public transit system as any transit system created or licensed by a governmental agency or managed by a private management firm under contract to the governmental agency owner. Most important to our quest for statutory meaning on the immunity from suit-in-tort issue before us, section 4 of Act 424 provided the following:

> (a) Each authority, when created, and the members thereof, shall constitute a public corporation and, as such, shall have perpetual succession, may contract and be contracted with, may sue and be sued, and may have and use a common seal.

> (b) The exercise of the powers and performance of duties provided for in this chapter by each authority are declared to be public and governmental functions, exercised for a public purpose and matters of public necessity, conferring upon each authority governmental immunity from suit in tort. § 14-334-104.

From a fair reading of the foregoing enactments, we first must presume that, when it passed the 1981 Public Transit System law, Act 424, the General Assembly was well aware of prior Act 347,

---

[2] Act 542 of 1991 and 292 of 1993 provided all political subdivisions shall be immune from liability and from suit for damages except to the extent that they are covered by liability insurance.

which created the Motor Vehicle Safety Responsibility law and Act 893, which required Uninsured Motorist Liability Insurance for common carriers in the amounts prescribed in section 27 of Act 347. *See Bolden v. Watt*, 290 Ark. 343, 719 S.W.2d 428 (1986); *see also* Ark. Code Ann. §§ 23-16-302 (Supp. 1995) and 27-19-605 (Repl. 1994). It is also fair to say that, because common carriers must obtain liability insurance prescribed under Acts 347 and 893, the General Assembly intended that public-transit systems, like CAT, should come within those same intendments, if the systems come within Arkansas's definition of common carrier.

We initially note that we find no language in Act 424 that exempts a public transit system from the motor vehicle and liability insurance requirements in Acts 347 and 893. To the contrary, we find that section 12 of Act 347, as amended by Act 590, § 3 of 1987 [codified as Ark. Code Ann. § 27-19-212 (Repl. 1994)] enlarged the term "person" to include "public transit authorities."[3] In fact, the main purpose of Act 590 was to enable any political subdivision, including counties, municipalities, and public transit authorities, to qualify as a self-insurer. In sum, our reading and construction of the relevant acts, set out hereinabove, convinces us that the General Assembly fully intended to provide public transit systems with immunity from suit in tort, but like other political subdivisions or entities, they must obtain prescribed liability insurance or be self-insured.

In conclusion, we acknowledge CAT's argument that it is not a common carrier as defined in § 23-16-301 and therefore it is not subject to the requirements of liability under § 23-16-302 and Act 347, § 27, now Ark. Code Ann. § 27-19-605. We disagree. CAT conceded below that, as an entity of a municipal corporation, it is a "person, firm, or corporation" as those terms are employed defining "common carrier" in § 23-16-301(a). However, CAT now retreats from that concession and argues the word "corporation" does not mean or include a municipality. CAT's earlier argument was correct. As we pointed out above, Act 590 (§ 27-19-212)

---

[3] The term "person" in § 27-19-212 has been enlarged to include those following italicized governmental entities. "Person" means every natural person, firm, copartnership, association, corporation, *or any political subdivision of the State of Arkansas, individually or collectively, which shall include all counties, municipal corporations, public transit authorities, school districts, special improvement districts, and any other political subdivision.*

defines the term "person" to include "public transit authorities," and considering the connecting and relevant subject matters, we are unaware of any compelling reason why the term person in § 23-16-301(a) should not be read to include public transit systems as well. CAT also submits that it fails to come within the definition because it is not a common carrier for compensation. Despite CAT's evidence showing its customers' fares compose only 21% of its operating income, the fact remains CAT charges and receives compensation for the services it renders to the public. For the reasons stated, we hold CAT comes within the statutory definition of common carrier.

Accordingly, we reverse the grant of summary judgment and remand for further proceedings.