Allison S. Patchell, DVM Chair, Veterinary Medical Examining Board #1 Natural Resources Drive Post Office Box 8505 Little Rock, Arkansas 72215
Dear Dr. Patchell:
I am writing in response to your request for an opinion on the following question:
 May a city that owns and operates an animal shelter employ a veterinarian to offer spay and neuter services to the public?
As background for your question, you report that the City of Fayetteville Animal Shelter employs a licensed veterinarian to provide veterinary services to animals belonging to the Shelter (before they are adopted out to the general public). You further report that it has come to the attention of the Veterinary Medical Examining Board ("Board") that the city is also providing spays and neuters to animals belonging to the general public. You indicate that your question is prompted by a previous Attorney General Opinion, Ark. Op. Att'y Gen. 97-168, which concluded that a non-veterinarian-owned entity may not lawfully offer veterinary services to the public, even if it employs a veterinarian to provide the services.
RESPONSE
The answer to your question is not entirely clear under the Arkansas Veterinary Medical Practice Act, A.C.A. §§ 17-101-101 — 314 (Repl. 2002), and would benefit from legislative clarification. Pending such clarification, however, the answer in my opinion is likely "yes" because I believe a court faced with the question would probably conclude that A.C.A. § 17-101-102(8)'s definition of *Page 2 
"person" does not include a municipal corporation. It should be emphasized, however, that any veterinarian employed by a city to offer veterinary services to the public is subject to all requirements of the Act, including regulation by the Board.
Your question is principally governed by the following provisions of the Veterinary Medical Practice Act ("the Act"):
 (a) No person may practice veterinary medicine in this state who is not a licensed veterinarian or the holder of a valid temporary permit issued by the Veterinary Medical Examining Board.
A.C.A. § 17-101-307.
 "Person" means any individual, firm, partnership, association, joint venture, cooperative, or corporation, or any other group or combination acting in concert, and whether or not acting as principal, trustee, fiduciary, receiver, or as any kind of legal or personal representative, or as the successor in interest, assigning agent, factor, servant, employee, director, officer, or any other representative of such a person[.]
A.C.A. § 17-101-102(8).
The answer to your question turns on the determination whether a city is included within this definition of "person." If a city is a "person" under the Act, then I believe it necessarily follows that the City of Fayetteville may not employ a veterinarian to offer services to the public because the City in that instance would be practicing or offering to practice veterinary medicine without a license, contrary to the Act.[1] The practice of veterinary medicine clearly may only be performed pursuant to a license, A.C.A. § 17-101-307(a), supra, or corporate *Page 3 
certificate, Rules and Regulations of the Arkansas VeterinaryMedical Examining Board (Jan. 1, 2009) at 11 ("Veterinary practice may be by sole practitioners, partnerships, or duly registered corporations. Only licensees may be partners. No corporation may practice or offer to practice unless it holds a current corporate certificate from [the] Board."). There is no procedure for a city to obtain a license or to be registered as a corporation. A corporation may employ a licensed veterinarian if the corporation is a professional corporation formed under the Arkansas Professional Corporation Act (A.C.A. § 4-29-201 — 211). See Ark. Op. Att'y Gen. 99-168.[2] But a city cannot avail itself of this law, which as previously noted, supra n. 1, requires the professional licensing of all officers, directors, and shareholders. This cannot reasonably extend to a city, particularly given that a city is constitutionally prohibited from holding shares in any corporation. Ark. Const. art. 12, § 5 ("No county, city, town or other municipal corporation, shall become a stockholder in any company, association, or corporation. . . .").
Returning, then, to the question of whether the Act's definition of "person" includes a city, it seems clear that a city is not an "individual, firm, partnership, association, joint venture" or "cooperative." The inquiry thus focuses on the word "corporation." It is somewhat difficult to determine from the plain language of the statute whether this includes municipalities, or is limited instead to non-municipal corporations. Cf. City of Ft. Smith v.Carter, 364 Ark. 100, 216 S.W.3d 594 (2005), rev'd on othergrounds City of Ft. Smith v. Carter,372 Ark. 93, 270 S.W.3d 822 (2008) (addressing the question of whether municipal corporations are included within the term "corporation" under A.C.A. § 18-15-605(b), regarding attorney's fees in an eminent domain action, and determining that the statute is ambiguous). A city plainly is a "bod[y] politic and corporate." A.C.A. § 14-54-101 (Repl. 1998). A "municipality" has been judicially defined, moreover, as "a public corporation created for governmental purposes. . . .") Memphis Trust Co. v. St. FrancisLevee Dist., 69 Ark. 284, 286, 62 S.W. 902 (1901). It would therefore seem to reason that the legislature might have used the word "corporation" to include municipal corporations. Cf.Scurlock v. City of Springdale, 224 Ark. 408, *Page 4 273 S.W.2d 551 (1954) (recognizing, as a general proposition, that the word "corporation" in a statute could be interpreted to include a municipal corporation.)
I believe it bears noting, however, that the legislature has specifically included municipal corporations under several other statutes, suggesting that it could easily have done so under A.C.A. § 17-101-102 had that been its intent. E.g., A.C.A. § 16-111-101 (Repl. 2006) (defining "person" under declaratory judgment statute to mean "any person, partnership, joint-stock company, unincorporated association, or society, ormunicipal or other corporation of any characterwhatsoever." (Emphasis added); A.C.A. § 18-15-601 (Repl. 2003) (vesting the power of eminent domain in "[a]ll municipal corporations in this state and allcorporations, including not-for-profit corporations and water associations" which supply water to city or rural inhabitants. Emphasis added); A.C.A. § 27-19-212 (defining "person" under the Motor Vehicle Safety Responsibility Act to mean "every natural person, firm, copartnership, association, corporation, or any political subdivision of the State of Arkansas, individually or collectively, which shall include all counties, municipal corporations, public transit authorities, school districts, special improvement districts, and any other political subdivision.")
I also note certain language in the Act that may suggest the term "corporation" refers to "a corporate practice," which would tend to exclude governmental entities. A.C.A. § 17-101-203(9) (authorizing the Board to "[r]egulate all veterinarians in a corporate practice and prevent corporate or noncorporate holdings from being sold to, directed by, or controlled by a nonveterinarian.") The context in which the term "corporation" is used therefore seems to suggest that it is limited to non-municipal corporations. Compare Salley v. Central ArkansasTransit Auth., 326 Ark. 804, 934 S.W.2d 510 (1996) (looking to the relevant subject matter to determine whether Central Arkansas Transit Authority — a municipal entity — is included as a "person, firm, or corporation" under A.C.A. § 23-16-301's definition of "common carrier") and City of Ft. Smith v. Carter,364 Ark. 100, 216 S.W.3d 594 (2005), supra (relying upon the statute's context and legislative history to determine whether the term "corporation" in A.C.A. § 18-15-605(b) includes municipal corporations.)
While it is difficult to predict with certainty how a court would view the matter, I tend to believe that if a court were faced with interpreting A.C.A. § 17-101-102(8)'s definition of "person," it would conclude that such definition does not include a municipal corporation. Assuming I am correct in this prediction, this would mean that a city would not be in violation of the Act if it employed a *Page 5 
veterinarian to offer spay and neuter services to the public.[3] I should emphasize, however, that the legislative intent is far from clear. Clarification of the statute is therefore warranted.[4] It is also important to recognize that any veterinarian who is employed by a city to offer veterinary services to the public remains subject to all requirements of the Act, including rules and regulations promulgated by the Board.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] It should be noted that resolution of this question concerning services to the public in no way affects the treatment of animals belonging to the City shelter. Arkansas Code Annotated § 17-101-307 clearly authorizes the City, as owner of those animals, to perform "routine accepted livestock management practices in the care of [such] animals. . . .Id. at (b)(5) ("This chapter shall not be construed to prohibit . . . [t]he owner of an animal, his or her consignees, and their employees from performing routine accepted livestock management practices in the care of animals belonging to the owner[.]"). Additionally, there is an exception for city employees who perform euthanasia as part of their official duties: "This chapter shall not be construed to prohibit . . . employees of local government who are certified by an agency approved by the board to perform euthanasia from performing their official duties[.]"Id. at (b)(1).
[2] As noted in Attorney General Opinion 99-168, ownership of such professional corporations is limited to members of the particular professional practice.Id. at 2 (citing A.C.A. § 4-29-208). See also
A.C.A. §§ 4-29-206(b) (mandating that the professional services be "rendered by or through persons who are duly and properly licensed, individually, to engage in the profession[,]" and — 210 (requiring a certificate of registration from the state licensing entity.) Accord Rules and Regulations of the ArkansasVeterinary Medical Examining Board, supra at 11 ("No veterinarian may practice or offer to practice veterinary medicine as an officer or employee of any corporation which does not hold a valid corporate certificate. . . .")
[3] The separate question might arise whether a city is generally authorized to provide such services. In my opinion, this question can be resolved in a city's favor based upon the city's general police powers. It may also be relevant to note that cities are expressly authorized to "prevent cruelty to animals," A.C.A. § 14-54-103(7) (Repl. 1998), and that the General Assembly has expressly declared the maintenance of animal shelters to be a work that is "necessary to protect the health, safety, and general welfare of the citizenry of this state." A.C.A. § 20-19-101 (Repl. 2005). My immediate predecessor concluded, based upon these authorities, that a city has the authority to lease property outside the city for purposes of maintaining an animal shelter. Op. Att'y Gen. 2003-047. I agree with that conclusion. It is my further opinion that a city would be factually justified in determining that offering spay and neuter services to the public is a necessary means of carrying out its express power to protect the public health, safety, and welfare, and possibly to prevent cruelty to animals. The Arkansas Supreme Court has generally adhered to the view that cities have broad discretion to determine what is necessary for the public welfare, safety, comfort, and convenience.E.g., Phillips v. Town of Oak Grove,333 Ark. 183, 189, 968 S.W.2d 600 (1998) (recognizing a city's "plenary duty to exercise its police power in the interest of the public health and safety of its inhabitants[,]" citing A.C.A. § 14-55-102, the so-called "general welfare clause," and A.C.A. § 14-54-103, which authorizes cities to "[p]revent injury or annoyance within the limits of the municipal corporation from anything dangerous, offensive, or unhealthy. . . .")
[4] Legislation proposed during the recent legislative session would have put to rest any uncertainty with respect to municipal animal shelters providing veterinarian services to the public.See House Bill 2240 of the 87th General Assembly. This bill was not enacted into law.
 *Page 1