DAVIS *v*. WALLER, COUNTY JUDGE.

5-3321                                           379 S. W. 2d 283

Opinion delivered June 1, 1964.

*Catlett & Henderson,* for appellant.

*Smith, Williams, Friday & Bowen,* by *Herschel H. Friday* and *Frank Warden, Jr.,* for appellee.

Jim Johnson, Associate Justice. This is a taxpayers' suit to enjoin levy of taxes and issuance of bonds to defray the cost of constructing and equipping a county hospital.

On September 18, 1963, appellants Howard Davis and John H. Stamps filed a complaint in White Chancery Court against appellee Forrest Waller, White County Judge. The complaint alleges that the action was brought under Article 16, § 13 of the Arkansas Constitution (the illegal exaction provision); that a called special election was held on September 10, 1963, to determine (1) whether a county hospital should be constructed and equipped at an estimated cost (to the county) of $600,000, and (2) whether a tax should be levied not to exceed two mills to pay bonds to be issued for construc-

tion and equipment of the hospital; that a majority of the votes cast approved both construction and tax; that Amendment 17 as amended by Amendment 25, while authorizing a tax for hospital construction, gives no authority for the purchase and installation of hospital equipment; that the plans and specifications of the proposed hospital filed in the office of the county clerk were inadequate, incomplete and unsuitable to formulate a reasonable understanding of the nature, extent and approximate cost of the proposed hospital; and prayed that the county judge be enjoined from calling the quorum court into session to levy the tax, from presenting such proposal to the quorum court at any regular, special or adjourned term, and from issuing any bonds thereunder; and for a declaratory judgment that Amendment 17 as amended by Amendment 25 includes no authority for issuance of bonds to provide money to purchase equipment for a county hospital. The record reflects the following:

(1) The county court entered an order declaring the necessity for the project (the acquiring a site for and constructing and equipping a county hospital) on August 7, 1963, which order appointed an architect to prepare preliminary plans, specifications and estimates of cost for the proposed project.

(2) Plans, specifications and estimates (hereinafter referred to as plans) were prepared and filed in the office of the county clerk on August 9, 1963, where they remained subject to the inspection of any interested person. A copy of the plans was introduced in evidence.

(3) The county court entered an order on August 10, 1963, approving the plans and calling the special election for September 10, 1963. The election was duly held with the results as follows:

| | |
|---|---|
| For construction | 4075 |
| Against construction | 2707 |
| For building tax | 3987 |
| Against building tax | 2774 |

Following trial on December 9, 1963, the chancellor found:

(1) The preliminary plans were proper for a reasonable understanding of the nature, extent and approximate cost of the proposed hospital, and met all the requirements of Amendment 17, and such preliminary plans were properly approved by the county court, and

(2) The submission to the electors of the question of equipping the proposed county hospital and the proposed expenditures therefor out of the proceeds of the special tax are within the authority conferred by Amendment 17.

From the decree dismissing the complaint with prejudice, appellants have prosecuted this appeal.

For reversal appellants urge three points. The first and third points are that Amendment 25 does not authorize the levy of a tax to equip a hospital, and that equipment includes only those items affixed to the building and which are durable. These points questioning the legality of equipping the hospital have been considered very recently by this court in *Hollis* v. *Erwin*, 237 Ark. 605, 374 S. W. 2d 828, wherein we held that a county is authorized under Amendment 17 to equip a hospital, and explained that:

"A hospital is more than a mere building of four walls and a roof. Webster's Dictionary defines a hospital as: 'An institution or place where sick or injured persons are given medical or surgical care.' A bare and empty building could hardly fit that definition . . . Certainly the equipping of the hospital is an essential part of its construction . . . There is authority for the equipping and furnishing of buildings authorized by Amendment 17."

Appellants ask us to re-examine this holding and we have carefully noted their argument. It is our considered opinion that *Hollis* is correct and we here reaffirm it. Appellants also argue that even if equipment may be

included, the only type that is proper is durable equipment affixed to the building. We do not agree. The public purpose embodied in Amendment 17 can be accomplished only by a functioning hospital and, therefore, bonds may be issued and the proceeds thereof spent for any type of equipment, furnishings and property necessary for or related to a functioning hospital.

Appellants' second and principal point urged for reversal is that the plans and specifications failed to furnish a reasonable understanding of the nature, extent and approximate cost of the hospital.

Section 2 of Amendment 17 provides for the preparation of such plans, specifications or estimates of cost as may be proper for a reasonable understanding of the nature, extent and approximate cost of the contemplated improvement. Section 3 of Amendment 17 vests jurisdiction in the county court to examine and approve such plans, specifications and estimates. Plans were prepared and filed in the office of the county clerk and were subsequently approved by the county court, in accordance with the provisions of Amendment 17. Appellants challenge the sufficiency of the plans to convey a reasonable understanding of the nature, extent and approximate cost of the proposed hospital. As set out above, appellants invoked the ''illegal exaction'' jurisdiction of the chancery court. We have stated that this provision of the Constitution does afford taxpayers injunctive relief in a proper case against arbitrary or unlawful action. *Starnes* v. *Sadler,* 237 Ark. 329, 372 S. W. 2d 585. However, the provision does not confer jurisdiction upon chancery in all situations and under all circumstances. In this case, the provision must be interpreted in the light of the language of Amendment 17 and the purposes intended to be accomplished by the electors in adopting Amendment 17. Since this is an area involving the public interest and since it has been the subject of a considerable amount of litigation, we have concluded that it would be appropriate here to reconcile some conflicts which have heretofore existed in our law. We have determined that the

various steps set forth in Amendment 17 which are preliminary to the election properly fall in the category of election procedures concerning which strict compliance may be mandatory before the election, but is only directory thereafter. Therefore, any defect with regard to any of the preliminary steps (in connection with the filing or the contents of the order declaring necessity, the filing or the contents of the plans, specifications and estimates, or the filing and the contents of the order approving the plans and calling the election) raised for the first time *after* an election cannot defeat the will of a majority of the electors. See the following cases involving analogous situations: *Wheat* v. *Smith,* 50 Ark. 266, 7. S. W. 161; *Cisco* v. *Caudle,* 210 Ark. 1006, 198 S. W. 2d 992; *Brown* v. *Bradberry,* 214 Ark. 937, 218 S. W. 2d 733; *Jeffery* v. *Fry,* 220 Ark. 738, 249 S. W. 2d 850; and *Luther* v. *Gower,* 233 Ark. 496, 345 S. W. 2d 608. As was stated in *Wheat* v. *Smith, supra*:

". . . The courts hold that 'the voice of the people is not to be rejected for a defect or want of notice, if they have in truth been called upon and have spoken.' " In this regard, *Thomas* v. *Sewell,* 184 Ark. 289, 42 S. W. 2d 225, (in which a majority of the court held that the failure of the county court to enter the order approving the plans and calling the election on the record within a reasonable time before the election was a jurisdictional defect which avoided the authority conferred at the election and prompted the court to direct the entry of an injunction against the county proceeding further) is expressly overruled. We are convinced that our interpretation is the one intended by the adopters of Amendment 17 and the one necessary for the proper realization of the public purposes intended by the Amendment. Thus, these preliminary matters cannot be challenged after the election by a suit in chancery under Article 16, § 13 or otherwise or in any other court proceeding because any defect in the taking of the preliminary steps is cured by the election. Election contest questions arising from the conduct of the election can be raised in an appropriate election contest after the election and the mechanical

counting and determining of results can be raised in appropriate proceeding after the election. See *Jones* v. *Dixon,* 227 Ark. 955, 302 S. W. 2d 529. This is not to say, however, that questions of basic authority (such as the equipment issue raised by appellants herein, an attempt to issue bonds under Amendment 17 without an election, an attempt to levy more than a five mill tax, etc.) cannot be raised in proceedings in Chancery under Article 16, § 13 filed after the election.

It follows, from what has been said, that the challenge in appellants' complaint as to the sufficiency of the plans came too late since the suit was instituted after the election. In the case at bar, however, both parties indicated a desire for a complete disposition on the merits of the issues. We are convinced here that it would be in the public interest. Therefore we have proceeded to review the sufficiency of the plans. As we have seen, Amendment 17 vests jurisdiction in the county court to determine the sufficiency of the plans. Actually, under the Amendment and the facts of this case, the initial determination was made by a professional expert, the architect (see Section 2 of Amendment 17) which determination was subsequently approved, after examination, by the county court (see Section 3 of Amendment 17). As above pointed out, the proper procedure would have been a direct challenge before the election, and the court review of the action of the county court in this regard would go only to the extent of determining whether the county court regularly pursude its authority and did not act arbitrarily or capriciously. But, in order to dispose of the issue, we have examined the plans and the evidence and have determined that the county court in the first instance and the chancery court in the trial there properly found and concluded that the plans were sufficient to meet the requirement of Amendment 17 of conveying a reasonable understanding of the nature, extent and approximate cost of the proposed hospital. The plans, on a single sheet, reflect a front elevation which indicates generally the appearance of the building from the front; contain outline specifications; contain a floor

plan showing waiting rooms, offices, dining, kitchen, mechanical rooms, locker space, operating rooms, x-ray, central sterilization and supply, treatment rooms, record room, laboratory, isolation rooms, bedrooms (a typical bedroom with bath facilities is shown), nurses stations, linen areas, treatment areas, delivery rooms, scrub rooms, labor and recovery rooms, sanitation areas, nursery wing, emergency entrance and public entrance; and reflect an estimated total cost of $1,200,000. The evidence in this case reflects that the proper preparation of more detailed plans would have cost the county from $10,000 to $54,000. Indeed, if the various counties had to obtain and spend such substantial sums on plans, specifications and estimates before they could even let the electors vote on the question, it seems to us that the public purposes sought to be accomplished by Amendment 17 would largely be defeated.

The decree of the chancery court is affirmed, and, pursuant to motion of appellees and for good cause show an immediate mandate is ordered as being in the public interest.