Charles JOHNSON, Washington County Judge, and the WASHINGTON COUNTY QUORUM COURT v. Gordon L. CUMMINGS

83-198                                              663 S.W.2d 168

Supreme Court of Arkansas
Opinion delivered January 23, 1984

230

*Ginger Parker Crisp,* Washington County Attorney, for appellants.

*Davis, Cox & Wright,* by: *William Jackson Butt, II,* for appellee.

STEELE HAYS, Justice. This case involves an interpre-

tation of Amendment 17 to the Arkansas Constitution which vests in the electors the power to authorize the construction of a county courthouse, jail or hospital. The Chancery Court enjoined the appellants, the County Judge and Quorum Court of Washington County, from entering into any contract or purchasing any land to be used to construct a county jail until the construction of the jail is approved by the voters. On appeal, we affirm the Chancellor.

This dispute began when a consent order was entered in federal court suspending action to declare the Washington County jail unconstitutional, to allow the county time to decide whether to construct a new jail or remodel the existing one. After several months of investigation by a Jail Advisory Board the Washington County Quorum Court proposed to build a new jail and passed a resolution authorizing negotiations to purchase a twenty-two acre tract of land. The land was to be paid for with existing county funds. Construction of the new jail was to be paid for over a period of years partly with existing revenues and partly with funds to be raised through a millage increase. Appellee, a taxpayer and citizen of Washington County, petitioned to enjoin the County Judge and the Quorum Court from entering into any contract for the purchase of the land until the requirements of Amendment 17 were met. The Chancery Court held that the land was being purchased solely for the purpose of constructing a jail and, therefore, purchase of the land required voter approval under Amendment 17. At the subsequent election, the voters defeated the proposal to build a new jail by a vote of 7,797 to 3,214 and also rejected the proposed building tax by a vote of 7,761 to 3,053.

The appellants raise two issues on appeal: (1) they argue that Amendment 17 requires voter approval only when the construction is to be financed by a millage increase and not when existing funds are to be used, as here; and (2) they maintain the Chancellor erred in finding that when land is purchased solely for the purpose of erecting a jail; such purchase should be interpreted as "construction" within the meaning of Amendment 17.

Amendment 17 provides:

The power and right is hereby vested in the qualified electors of each respective County in this State by a majority of the said electors voting on the question, to authorize the construction, reconstruction, or extension of any County Court House, County Jail, or County Hospital, and to authorize the levy of a tax not to exceed one-half of one per cent on the dollar of the valuation of all properties in such County subject to taxation to defray the costs and expenses thereof, or to take up any indebtedness existing at the time of adoption hereof incurred in building, construction, or extending any County Court House, Jail, or Hospital.

Addressing the second point, appellants contend that the purchase of land does not violate Amendment 17 because "construction" does not occur simply because land is purchased. We agree that ordinarily a prohibition against "construction" of a jail is not tantamount to a prohibition against purchasing land, as Amendment 17 does not purport to restrain a county government from purchasing land for use by the county. But the significance here is that the Chancellor found on undisputed proof that the *sole purpose* for the purchase of the land was to build the jail, and that fact brings the project within the prohibition of Amendment 17. If it were otherwise, the provisions of the Amendment could conceivably be circumvented by the simple expediency of constructing jails (or courthouses) in phases, year by year, as funds become available. We have no hesitancy in holding that it was not the intent behind Amendment 17 to permit that kind of financing. We think the Amendment means the county may not undertake the construction of the three facilities covered by Amendment No. 17 except where it has the necessary funds on hand, unless the voters have approved. The case of *Carter* v. *Cain*, 179 Ark. 79, 14 S.W.2d 250 (1929), notes the fallacy of such a concept in quoting the history behind the adoption of Amendment 17. In 1925, before Amendment 17 was adopted, the case of *Kirk* v. *High*, 169 Ark. 152, 273 S.W. 389 was decided, where we approved the construction of a courthouse for Lonoke County notwithstanding Amendment No. 11. The courthouse was to cost $150,000 and was to be paid for in twenty annual installments not exceeding

$10,000 in any one year, to be paid for with annual millage increases. In *Carter,* we said:

> After the court had construed this Amendment No. 11 to mean that a county could go in debt for courthouses and jails, the people then adopted Amendment No. 17, vesting the authority and right to construct courthouses and jails and to levy taxes to pay for them, in the qualified electors of the county. *Amendment No. 17 was evidently adopted for the very purpose of meeting the decision of this court and accomplishing what they thought was accomplished by Amendment No. 11, when adopted. That is, to prevent counties from going in debt, and provide a method for building and paying for courthouses and jails.* (our italics.)

The appellants point out that without a building site, essential cost estimates are not possible. But all that is required under Amendment 17 is "such plans, specifications or estimates of cost as may be proper for a reasonable understanding of the nature, extent and approximate cost of the contemplated improvement." *Davis* v. *Waller, County Judge,* 238 Ark. 300, 379 S.W.2d 283 (1964). Appellants' argument that the county would save money by buying the land now instead of waiting until after an election when prices may be higher applies with equal force to the purchase of all of the building materials. Yet such a purchase before voter approval is received would plainly violate Amendment 17. The voters could have a "reasonable understanding" of the cost of the proposed construction if, included in the cost estimate, is the price of the property upon which the county hopes to erect the jail. The actual purchase of the land before the election is both unnecessary and premature.

The appellants cite Act 60 of 1972 as codified in Ark. Stat. Ann. § 17-924 (Repl. 1980) which provides that:

> [N]o vote of the electors of the county shall be necessary to authorize the construction, . . . of such county jail facilities or for the expenditure of county general funds therefor, provided current operating funds are avail-

able for such purposes and provided further that county funds expended . . . are matched with an equal or greater amount of federal funds.

Act 60 is inapplicable here because federal funds are not on issue in the matter before us. However, the text following the statute contains the legislative purposes behind the Act. According to the text, the purpose of Amendment 17 was to:

> . . . prohibit counties from undertaking the construction or improvement of jails without approval of the people with respect to the funding of bonded indebtedness therefor. . . . Therefore, the General Assembly concludes that counties of this State should be permitted to use available surplus operating moneys to construct or make necessary improvements to county jails . . .
> . . .[A]pproval of the electors of the county . . . to . . . construct . . . a county jail . . . is not required where moneys used for such improvements are made available from . . . existing surplus funds. . . .

The appellants maintain that Act 60 interprets Amendment 17 as not requiring an election before the county can purchase land in this case. But the argument fails for several reasons. First, on the one hand, appellants urge that the mere purchase of land is *not* "construction" within Amendment 17. On the other, they argue that it *is* "construction," but that Act 60 does not require voter approval before the purchase can be made. Second, the "construction" is not being financed with "available surplus operating money," only the initial purchase of land. And finally, as we stated in *Blalock* v. *Miller,* 175 Ark. 98, 298 S.W. 995 (1927):

> If the Legislature could change the meaning of the amendment as construed by the court and make it mean something else than its plain meaning, then the amendment had just as well never have been passed. Such a course would place an act of the Legislature above the Constitution. The meaning of a provision of the Constitution or amendment thereto having been

declared by the court, it is plainly not within the power of the Legislature to change the meaning by statute.

Although *Carter* states that Amendment 17 provides for the submission to the voters of both questions, i.e. the improvement and the tax, there is another weakness in the appellants' argument. Their appeal is based on the fact that the land was to be purchased with existing funds, whereas the construction costs were to be paid from a combination of existing funds and millage increases. There is no question but that the election would have been necessary before jail construction could begin, which appellants concede. Hence, the purchase of the land was merely the first step in the building of the new jail, not a separate, unrelated act. Since the overall project of building a county jail necessitated a millage increase, it comes squarely within the provisions of Amendment 17 and an election is mandatory.

Turning to the remaining point, the language of Amendment 17 provides a clear procedure whereby the electors of a county can vote on whether or not to authorize construction of a jail, courthouse or hospital to be funded by a tax increase. The question is whether Amendment 17 prohibits the purchase of lands from existing funds for use as a jail site where admittedly the county does not have funds to construct the jail. In *Carter* v. *Cain, supra,* we addressed essentially identical issues. There, it was argued that Amendment 17 provides a county with two distinct and unrelated methods of building a courthouse: "one plan with additional taxes, and the other without additional taxes." We rejected the contention and said:

Amendment 17 authorizes the county court to determine the necessity of building a courthouse or jail and to have plans and specifications made, and to submit the question to the people. It is insisted that, if the county has money on hand to build the courthouse, or, rather, if they have some money and can pay it out in annual installments, then No. 17 does not apply. If they have no money, then the people may determine whether they shall have a courthouse or jail.

In the first place, the amendment provides for submitting both questions to the electors. They shall vote for the construction or against the construction, and also vote for tax or against tax. In other words, the qualified electors are to determine whether there is to be any improvement made, and also to vote for or against a tax for the purpose of paying for the improvement.

It is true that in *Carter* v. *Cain,* we said that if a county has the money to build a courthouse there would be no occasion to submit the question to the voters. But that does not mean a county may build a courthouse in yearly stages out of its surplus. Washington County does not have the money to build a jail, it only has the money to buy land on which the appellants *hope* to build a jail. And, if the county buys the land and the voters then reject the proposed construction, the consequence is the county has made a needless investment in land for which it has no present use.

In *Carter,* this Court noted that the word "vested" carried a special emphasis, that in Amendment No. 17 the people "vested" in themselves "the power and right" to authorize the construction of jails and courthouses, which we said was "the entire power," and a "complete and consummated right." We think the plan proposed by appellants is inconsistent with that language and with the spirit of the amendment. The Chancellor correctly held that a county may not accomplish in piecemeal fashion what the amendment purports to prohibit in its entirety.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I agree with the majority that the language of Amendment 17 is clear. However, I cannot agree that it clearly prohibits the purchase of land upon which a jail or other facility may be constructed. There is absolutely no mention of purchasing lands in the Amendment. The majority rely on *Carter* v. *Cain,* 179 Ark. 79, 14 S.W.2d 250 (1929) as precedent for the decision handed down today. The only resemblance to the

present case is that both cases were argued upon the interpretation of Amendment 17. *Carter* involved the construction of a courthouse, not acquisition of lands. Although I disagree with the interpretation of Amendment 17 in the *Carter* case, I find it is not inapposite in the present case.

Amendment 17 provides that the people shall vote "for construction" or "against construction" and "for tax" or "against tax." There is no provision for voting for the purchase of land. Washington County is under a federal court order to do something to improve its jail, and this court is assisting in putting the county officials in contempt of the federal court. It is not the business of this court to go about telling the counties and cities, or the state for that matter, how to spend their money. While relying on *Carter*, the majority ignore a passage (at page 89) which states:

> If the county had money with which to build a courthouse or jail, there would of course be no occasion to submit the question to the qualified electors as to whether they would or would not vote a tax. No tax would be necessary.

*Carter* also held that in construing a constitutional amendment, courts should give words their most natural and obvious meaning. There is no dictionary or other book or writing including any trade publication which defines "construction," "reconstruction," or "extension" to include a purchase of land. To give such construction to these ordinary words is to ignore the rule set forth in *Carter* and hundreds of other cases since decided by this court.

The Arkansas General Assembly attempted to remove any doubt about construction of jails and courthouses when it enacted Act 60 of 1972. This statute [Ark. Stat. Ann. § 17-924 (Repl. 1980)] attempted to clarify Amendment 17 as it relates to authority to construct county jails from funds on hand and grants received. This statute (set out in part in the majority opinion) specifically states that counties may construct and/or improve jails when there is surplus money available such as is present in this case. Surely the framers

of Amendment 17 took for granted the counties would provide constitutional jail facilities. It is not unreasonable to suppose that passage of Amendment 17 was conditional upon the assumption that the citizens of a county already provided constitutional jails but might want to go further and provide even more modern facilities. If we ignore this premise and hold that the Amendment requires voter approval, then the Amendment is unconstitutional because it allows the continued operation of jails whose condition may constitute cruel and unusual punishment. The voters of many counties may never vote to improve their jails.

The opinion as written reaches the absurd result that a county cannot pay for a jail or courthouse facility from funds on hand regardless of the amount of funds available. This is the same as holding a person may not pay cash for a home when there is a statutory procedure for buying it on credit. I find the majority opinion confusing. For example, it states: "We think the Amendment means the county may not undertake the construction . . . except where it has the necessary funds on hand . . ." That conflicts with the holding of the court in the final result. The opinion holds Act 60 of 1972 to be inapplicable. That part of Act 60 which authorizes counties to construct jails from "Available surplus operating moneys" seems to me to be clearly applicable here. Either Act 60 is unconstitutional or it is applicable. Its constitutionality is not attacked. Therefore, it is applicable. The opinion then construes Amendment 17 to provide "the electors of a county can vote on whether or not to authorize construction of a jail, courthouse or hospital to be funded by a tax increase." That was never in issue. There is no tax proposal before us. Nevertheless, that is exactly the meaning of Amendment 17. It is in no manner designed to regulate the purchase of land.

I would reverse.