James KEETON *v.* Juanita BARBER, Circuit Clerk, et al.

90-163                                                    806 S.W.2d 363

Supreme Court of Arkansas

Opinion delivered April 1, 1991

[Rehearing denied April 29, 1991.*]

*Robert E. Irwin*, for appellant.

*John Bynum*, for appellee.

DAVID NEWBERN, Justice. This is a taxpayer's suit. The appellant, James Keeton, challenged the issuance of bonds by Pope County. The bonds were issued to raise money for renovation of the county courthouse. The ballot title by which the bond issue was presented to the people for approval referred to using money left over from a previous jail construction bond issue in

---

*Hays and Glaze, JJ. would grant petition for rehearing as it relates to the parking lot issue.

conjunction with the money to be raised by issuance of new bonds. Keeton contends it was illegal to use the leftover jail money. He also contends it was illegal for the County to acquire land for and construct a parking lot for the courthouse because the voters were not apprised of that purpose by the ballot title. There was no mention of a parking lot in the ordinance submitting the question to election nor in the ballot. The chancellor held that the transfer of funds was proper and the parking lot was included. No question was raised, either to the chancellor or in this appeal, whether the challenge should have occurred prior to the election in which the voters approved the bond issue. We hold it was improper to use the jail bonds money for courthouse construction because, to the extent that issue was at all presented to the voters, it was presented improperly. We also hold that the record before us does not support the chancellor's conclusion that the parking lot was authorized.

Emergency Ordinance No. 88-0-51 was presented on the General Election Ballot for Pope County, November 8, 1988, as follows:

> An ordinance submitting to the voters of Pope County, Arkansas, the question of issuing bonds under Amendment No. 62 to the Constitution of the State of Arkansas for the purpose of financing a portion of the cost of courthouse improvements (with another portion of the cost to be paid from excess proceeds of the tax levied to pay a county jail bond); selecting an underwriter for the courthouse bonds; employing bond counsel; prescribing other matters pertaining thereto; and declaring an emergency.
>
> An issue of capital improvement bonds of Pope County in the maximum principal amount of $2,800,000 for the purpose of financing a part of the cost of the courthouse improvements to be payable from a continuing annual ad valorem property tax to be levied at the maximum rate of 0.6 mill on the dollar of the assessed valuation of taxable property in the county.

### 1. The jail money

Money raised by issuance of bonds for a public project may not be used for any purpose other than to retire the bonds or to pay interest and expenses directly connected with the bonds.

That was our interpretation of Ark. Const. amend. 17 pursuant to which the jail construction bonds were issued. *Morton* v. *Baker*, 254 Ark. 444, 494 S.W.2d 122 (1973); *Searcy* v. *Headlee*, 222 Ark. 719, 262 S.W.2d 288 (1953); *Stuttgart* v. *McCuing*, 218 Ark. 34, 234 S.W.2d 209 (1950). The jail project was completed, and the bondholders were repaid by September 7, 1988. Approximately $250,000 remained unspent.

Amendment 17 was repealed by Ark Const. amend. 62, passed in 1984, which is now the general constitutional authority governing issuance of local capital improvement bonds. Amendment 17 allowed only one purpose for bond issuance to be presented to the voters. Amendment 62, § 1.(a), provides:

> The legislative body of a municipality or county, with the consent of a majority of the qualified electors voting on the question at an election called for that purpose, may authorize the issuance of bonds, to bear interest at a rate not to exceed two percent (2%) per annum above the Federal Reserve Rate at the time of the election authorizing the bonds, for capital improvements of a public nature, as defined by the General Assembly, in amounts approved by a majority of those voting on the question either at an election called for that purpose or at a general election. The General Assembly shall prescribe a uniform method of calling and holding such elections and the terms upon which the bonds may be issued. If more than one purpose is proposed, each shall be stated separately on the ballot. The election shall be held no earlier than thirty (30) days after it is called by the legislative body. The tax to retire the bonds may be an ad valorem tax on real and personal property. Other taxes may be authorized by the General Assembly or the legislative body to retire the bonds.

■ The parties agree that if the voters consent to it money from one public project may be transferred to another. While the only authority cited for that proposition is an *obiter dictum* in *Searcy* v. *Headlee, supra,* we do not quarrel with it. The question here, however, is whether the favorable response of the voters to the ballot established that consent.

If two purposes were stated on the ballot, that is, one to transfer the leftover jail money and one to issue bonds raising the

additional money needed for the renovation, then it could be argued that Amendment 62 invalidated the ballot item altogether and both the money transfer and the courthouse bond issue would have been invalid. Keeton does not argue for that result. Rather, his argument, with which we agree, is that the parenthetical statement that the jail money is to be used simply did not constitute the statement of a "purpose" of the ballot. It did not inform the voter that he or she was deciding that issue, and thus it did not accomplish the transfer.

■ Keeton correctly notes that a parenthetical statement, by dictionary definition, is "A word, phrase, or sentence, by way of comment or explanation, inserted in, or attached to, a sentence which would be grammatically complete without it." Black's Law Dictionary, p. 1270, (Fourth ed. 1957). Even if the reference to the jail money had not been parenthetical, however, we could not conclude that a voter looking at the language would have known that a purpose of the ballot was to determine whether the money should have been transferred. While we have a duty to sustain an election where the information to the voters is sufficient to enable them to cast their ballots with fair understanding of the issue presented, *Vandiver* v. *Washington County*, 274 Ark. 561, 628 S.W.2d 1 (1982), we have no such duty where the voters do not have such information. We hold that the election did not authorize the transfer.

## 2. The parking lot

Ordinance No. 88-0-51 as passed by the Pope County Quorum Court contained language more specific than that in the ballot quoted above. The Ordinance described the courthouse improvements as follows: "acquire a site for and construct and equip a new building to house courts and public offices and renovate the existing Pope County Courthouse." The County has acquired land for and constructed a parking lot as part of the project. Keeton argues the parking lot was not authorized by the language of the Ordinance. The County contends it was authorized because it was incidental to a courts building and no separate reference to it was necessary.

Keeton cites only *Neal* v. *City of Morrilton*, 192 Ark. 450, 92 S.W.2d 208 (1936). In that case we held that a complaint stated a cause of action in alleging that the City had exceeded its

authority under Ark. Const. amend. 13, when it issued bonds for construction and maintenance of a hospital. Amendment 13 only permitted bonds to be issued for construction and equipment.

The County cites only *Davis* v. *Waller*, 238 Ark. 300, 379 S.W.2d 283 (1964). There we held that Amendment 17 permitted, by implication, bond money to be spent on equipping a hospital even though it was not mentioned in Amendment 25 pursuant to which a hospital could be constructed with bond money. We wrote that a hospital consists of more than a building, and equipment was essential to construction.

In *Railey* v. *City of Magnolia*, 197 Ark. 1047, 126 S.W.2d 273 (1939), we reached the same conclusion as in the *Davis* case. We held that approval by the voters of construction of a hospital was sufficient to imply authority to spend bond money for hospital equipment because the equipment was essential to the erection of a functioning hospital.

While these cases do not directly answer the question before us, we note that in the *Davis* case we characterized the issue as whether the equipment was "essential" to the hospital construction rather than "incidental." In the *Railey* case we likewise noted that "A naked building would not be a hospital. It would require the essential equipment to make it such, and authorization to erect a hospital would import authority to equip it."

█ The glaring difference between this case and the *Davis* and *Railey* cases is the fact that in those cases there was no evidence that the respective county and municipality already had hospital equipment on hand, while here it was clear that there was already a parking lot across the street from the courthouse for use of courthouse patrons. The lawyer who counseled the County on the bond issue, and who prepared the Ordinance but not the ballot title, testified he had been unaware of the existence of a parking lot for courthouse use across the street from the existing building. There was no other testimony on the issue.

It is tempting to say that in this day and age we could take judicial notice that parking space is an essential ingredient of the construction of any public facility and thus the requirement of Ark. Code Ann. § 14-164-308 (1987) that the purpose of the bond issue be stated in the ordinance was satisfied by implication. Even

though Ark. Code Ann. § 14-164-304 (1987) requires that we construe liberally the requirement of § 14-164-308, approval of the County's action, given the facts of this case, would make a mockery of the requirement that voters be informed of what they are asked to do. *See Vandiver* v. *Washington County, supra.*

It would have been very easy for the Pope County Quorum Court to have included the new parking facility in both the ballot and the Ordinance to which an inquisitive voter could have referred. We hold that it should at least have been a part of Ordinance No. 88-0-51 by which the Quorum Court decided to seek the approval of the voters for the project.

Reversed and Remanded.

Brown, J., concurs.

Hays and Glaze, JJ., concurring in part and dissenting in part.

Corbin, J., dissents.

Robert L. Brown, Justice, concurring. The majority is correct in the result reached, but it does not go far enough in describing how the ballot should have informed the voters so that they could have intelligently consented to the transfer of the jail money. Two purposes were contained in the ballot: one to approve the issuance of bonds to pay for the courthouse improvements and second to authorize use of the jail money to pay for the same project. I agree with the majority that describing the transfer of jail money in a parenthetical phrase did not adequately inform the voters. But what would have?

Amendment 62 is dispositive on this point: "If more than one purpose is proposed, each shall be stated separately on the ballot." Informed consent by the voters can only occur from following the dictates of Amendment 62 and, in this case, by describing the use of jail money in a separate paragraph.

The majority worries that affirming the clear dictates of Amendment 62 might invalidate the entire election, relief which not even the appellants request. I do not agree. Failure to state a purpose separately only invalidates that purpose. The appellants argue in their appeal that Amendment 62 requires that the approval of new courthouse bonds and the use of jail money be

separately stated on the ballot. We should reach that issue in this decision, and we do not.

TOM GLAZE, Justice, concurring in part, dissenting in part. I agree with the conclusion reached by the majority that the voters failed to validly authorize the use of excess jail bond funds to help pay for courthouse improvements. At the November 8, 1988 General Election, the voters of Pope County were presented with two distinct propositions, *viz.*, (1) whether the voters approved of issuing bonds under Amendment 62 to the Arkansas Constitution for financing courthouse improvements and (2) whether surplus tax collections from an earlier bond issue approved by the voters for jail construction could be used to underwrite a portion of the costs of the courthouse improvements.

Unfortunately, while these were two separate and distinct propositions, the question appearing on the ballot offered the voters only one choice — whether they approved the issuance of Amendment 62 bonds to finance the cost of courthouse improvements which would also be paid in part from excess or leftover proceeds of the tax earlier levied to pay for jail construction bonds issued pursuant to Amendment 17.

The general rule is that two or more distinct propositions cannot be submitted as a single question. *See* 29 C.J.S. *Elections*, § 170 (1965); 26 Am. Jur. *Elections* § 222 (1966). If, however, a natural relationship exists between the objects to be voted for, they can be submitted in one proposition. *Id.* Amendment 62 is clearly in accordance with the foregoing general rule since it provides that, if more than one purpose for calling or holding the election is proposed, each proposition shall be stated separately on the ballot.

Under the situation presented here, I see no natural relationship between the proposition regarding Amendment 62 bond issue for courthouse improvements and those involving tax monies left from the county's prior jail project. One proposition calls for issuance of bonds for the sole purpose of funding courthouse improvements under Amendment 62. The second proposition has no connection with the Amendment 62 bond issue except a forced one — whether surplus funds from the taxes levied for a prior jail bond shall be used to help pay for the courthouse improvements proposed under the new bond issue.

Because the Pope County voters were not given the opportunity to vote separately on the two foregoing propositions, I agree with the majority that the voters never approved the diversion of excess jail bond funds to pay for part of the courthouse improvements.

However, I disagree with the majority's conclusion on appellant's second point for reversal. Appellant argues that since the county's enabling ordinance authorizing issuance of the bonds did not specifically describe the acquisition of land and construction of parking facilities, such action by the county quorum court violated Amendment 62 and its enabling legislation. In this connection, Ark. Code Ann. § 14-164-308 (1987) provides that an ordinance authorizing the issuance of bonds must specify the purpose or purposes for which the bonds are to be issued. However, Ark. Code Ann. § 14-164-304 (1987) provides that the bond issue provisions shall be construed liberally to effect the legislative intent and that "all powers herein shall be broadly interpreted to effectuate the intent and purposes and not a limitation of powers."

The case of *Railey* v. *City of Magnolia*, 197 Ark. 1047, 126 S.W.2d 273 (1939), involved a bond ordinance which failed to provide that the funds would be used for equipment as well as for the construction of a hospital. The taxpayers argued that the election was ineffective and it was held for the purpose only of determining whether a hospital should be erected, because the ordinance made no reference to its equipment. In rejecting the taxpayer's argument, the court held that authority to erect a hospital would imply authority to equip it. The court further stated that a hospital would require the essential equipment to make it functional as such, and authorization to erect a hospital would import authority to equip it.

Here, in giving § 14-164-308 its broadest interpretation so as not to limit Pope County's power in issuing bonds, I believe the county's ordinance, when providing for a new courthouse building (annex) and renovations to the existing Pope County Courthouse, implies the authority to provide access to the new facility. Undoubtedly, a new courthouse facility with additional employees will require added access in the form of parking facilities. No evidence was offered to show that the existing parking lot could meet access needs for the new courthouse facility. Contrary to

what appears to be the majority court's view, I am convinced that in this day-in-time, parking lot access is an implied need or essential to the construction of a new building. Therefore, I would uphold the chancellor's holding to this effect.

For the reasons stated, I would reverse only that part of the chancellor's decision which upheld the use of the excess funds from the prior jail project, because I believe that issue should have been presented and approved by the voters as a separate proposition on the November 8, 1988 ballot.

HAYS, J., joins this opinion.

DONALD L. CORBIN, Justice, dissenting. I agree with the majority's decision that the people of Pope County, Arkansas, were not adequately apprised so as to give an informal consent to the transfer of excess monies of the jail bond tax levy into the courthouse construction project.

I dissent to the majority's finding that the parking lot is not essential to the courthouse construction. In this day and time parking is essential to any public or private offices. Today, any architect submitting an architectural scheme of plans which fails to include parking, and for that matter sidewalks and even perhaps landscaping, would be subject to harsh criticism from his peers. I would, under the facts of this case, include the parking lot as being essential to the courthouse construction under the authority of *Davis v. Waller*, 238 Ark. 300, 379 S.W.2d 283 (1964).