The Honorable Terry Smith State Representative 181 Caroline Acres Road Hot Springs, Arkansas 71913
Dear Representative Smith:
This is in response to your request for an opinion on whether Garland County and the board of trustees of the Garland County Library may use, for maintenance of a library facility, funds arising from the imposition of a sales and use tax imposed for a limited time under authority of A.C.A. §§ 14-164-338 and -327 (Cum. Supp. 1993) that remain unspent after the completion of the projects, including construction of the library, specified in the ballot title employed in the election at which the tax was approved by voters.
From the ordinances enclosed with your request, it appears that the Quorum Court of Garland County enacted an ordinance on August 10, 1992 (the "Election Ordinance"), which submitted to the electors of the County a ballot title, the affirmative portion of which was as follows:
 FOR ADOPTION OF A ONE-HALF PERCENT (1/2%) SALES AND USE TAX FOR A PERIOD OF TWELVE (12) MONTHS FOR THE DESIGNING, CONSTRUCTING, EQUIPPING, FURNISHING AND PURCHASE OF BOOKS FOR A NEW COUNTY LIBRARY; THE RENOVATION OR ADAPTATION OF THE EXISTING COUNTY LIBRARY BUILDING FOR COUNTY GOVERNMENT PURPOSES, AND FOR RELATED PURPOSES WITHIN THE COUNTY OF GARLAND.
The negative portion of the ballot title was identical to the foregoing except that it used "against" as the first word.
The electors of the County presumably approved the imposition of the tax at a special election held in September 1992, and the Quorum Court adopted an ordinance on October 12, 1992 (the "Levy Ordinance"), levying the sales and use tax pursuant to A.C.A. § 14-164-338, as contemplated by the Election Ordinance. The sections of the Levy Ordinance levying the tax provide that it is pledged:
 for the purpose of designing, constructing, equipping, furnishing, and purchasing books for a county library; [and] the renovation or adaptation of the existing library building for county government purposes. . . .
It should be noted that the Levy Ordinance does not contain the "and for related purposes" language of the Election Ordinance and the ballot title. The Levy Ordinance provides that the tax would be effective December 1, 1992, for a period of not more than twelve months, and I assume the tax levy expired according to its terms and has not been extended.
Your question, specifically, is whether the Library's board of trustees and the County may "use left over funds from this project to fund maintenance at the new library facility due to the `for related purposes' section in the ballot title." I assume, from your use of the phrase "left over funds," that both projects specified in the ordinances have been completed.
In my opinion, the answer to your question is "no."
A primary reason the surplus collections cannot in this instance be used for maintenance of the new library building is that the tax was levied only for the purposes of building the new library and renovating the old library building. As noted above, the Levy Ordinance, unlike the ballot title, did not contain the "and for related purposes" language. Arkansas Const. art. 16, § 11, provides:
 No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose.
"Levy" means to impose a tax under authority of law. Price v. DrainageDist. No. 17, 302 Ark. 64, 787 S.W.2d 660 (1990). A purported tax cannot be valid without there having been a levy of such tax. Id. Here, the Quorum Court, proceeding under authority of law (i.e., A.C.A. §§14-164-338 and -327), properly made the finding, required by A.C.A. §14-164-338(a), that the tax would produce sufficient revenue to complete the contemplated projects without the issuance of bonds, and properly submitted the question of the tax to the voters, as required by A.C.A. §14-164-338(a)(1). Nothing in the Election Ordinance, however, purported actually to impose, or levy, the tax.[1]
The Levy Ordinance, not the Election Ordinance or the ballot title, was the "law imposing a tax" within the meaning of Ark. Const. art 16, § 11, and it did "state distinctly the object of the same" as being the two capital improvement projects and nothing more. In the interpretation of tax legislation, "the express designation of one thing may properly be understood to exclude another." Leathers v. Active Realty, Inc.,317 Ark. 214, 216, 876 S.W.2d 583 (1994).
Because the tax here was not levied for the purpose of maintaining the library, or even for "related purposes," it is my opinion that no moneys arising from the tax may be used for maintenance due to the constraints imposed by Ark. Const. art. 16, § 11. While I have located no cases precisely on point, I believe my conclusion is consistent with the general thrust of existing case law under Ark. Const. art. 16, § 11. See, e.g.,Special School Dist. of Ft. Smith v. Sebastian County, 277 Ark. 326,641 S.W.2d 702 (1982).
With respect to the more inclusive language of the ballot title, it is true that the ballot title is "the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer. . . ." Ragan v. Venhaus, 289 Ark. 266, 271,711 S.W.2d 467 (1986), quoting Arkansas-Missouri Power Corp. v. City ofRector, 214 Ark. 649, 654, 217 S.W.2d 335 (1949). It does not follow, however, that simply because the electorate authorizes the levy of a tax for certain purposes, the tax is in fact levied for all of those purposes regardless of the language used in the legislation effecting the levy. While the cases cited in this paragraph demonstrate that the legislative body cannot go beyond those actions authorized by the electors (where such authorization is required), I find no law prohibiting the legislative body from employing less than all of the authority granted by the voters where, as here, such a restriction would not defeat any significant purpose of the tax approved by the voters. If, of course, a significant purpose of the tax cannot be accomplished, the levy of the tax constitutes an illegal exaction. Hasha v. City of Fayetteville,311 Ark. 460, 845 S.W.2d 500 (1993); see also Hartwick v. Thorne,300 Ark. 502, 780 S.W.2d 531 (1989) and Arkansas-Missouri Power Co. v. Cityof Rector, 214 Ark. 649, 217 S.W.2d 335 (1949) (both addressing application of bond proceeds).
It might be argued that the omission of the "related purposes" language from the Levy Ordinance was merely an irregularity in form that should not affect the County's ability to expend the tax revenues for those purposes. See, e.g., Board of Conference Claimants v. Phillips,187 Ark. 1113, 63 S.W.2d 988 (1933). Such an argument likely would not prevail, however, in the face of cases such as Dunhill Pharmaceuticals,Inc. v. State, 295 Ark. 483, 749 S.W.2d 666 (1988), wherein the court stated that in deciding an issue involving the levy of a tax, as opposed to an exemption, "we resolve any doubt or ambiguity in favor of the taxpayer."295 Ark. at 487.
At any rate, it is my opinion that revenues from the sales and use tax authorized by A.C.A. §§ 14-164-338 and -327 may not be used for maintenance of capital improvements whether or not the law levying the same may state "related purposes" to be within the contemplated purposes of the tax.
The Local Government Bond Act, codified at A.C.A. title 14, chapter 164, subchapter 3, is enabling legislation under Ark. Const. amend. 62. See
Local Government Bond Act, title, 1985 Ark. Acts 1785, 1785. Amendment 62 authorizes the issuance of bonds only for the purposes of financing capital improvements of a public nature and facilities for the securing and developing of industry. See Ark. Const. amend. 62, §§ 1 and 2. The Local Government Bond Act contains provision for the imposition of a sales and use tax to retire bonds issued thereunder, as well as the advalorem tax permitted by Amendment 62. A.C.A. § 14-164-327.
In 1988, the General Assembly amended the Local Government Bond Act to provide that the sales and use tax authorized thereby could, under certain specified conditions, be levied by local governments on a "pay-as-you-go" basis, without the issuance of bonds. See Act of July 25, 1988 (4th Ex. Sess.), No. 25, 1989 Ark. Acts 2608 (codified as amended at A.C.A. §14-164-338(a)).
The language of Act 25, including that of its title,[2] makes clear that the General Assembly contemplated that revenues from the "pay-as-you-go" tax levy authorized thereby would be used only for capital improvements. The emergency clause of Act 25 cited the "immediate and pressing need [of some local governments] to finance capital improvements" and in fact used the term "capital improvements" four times. Act of July 25, 1988 (4th Ex. Sess.), No. 25, emergency clause, 1989 Ark. Acts 2608, 2609. No other permitted use of the proceeds of the tax provided for by Act 25 was cited in the title, the emergency clause, or anywhere else in Act 25.
Arkansas Code Annotated § 14-164-338 has been amended several times since 1985. The title of Act 458 of 1989 stated that it was enacted to extend the period during which a legislative body could "Levy a . . . Sales and Use Tax to Finance Capital Improvements" and the emergency clause also referred to the tax as one that could be levied to finance capital improvements. Act of March 10, 1989, No. 458, title and emergency clause, 1989 Ark. Acts 1024, 1024-25. The emergency clause of Act 765 of 1991 referred to the provision of services to residents as well as the financing of capital improvements. Act of March 26, 1991, No. 765, emergency clause, 1991 Ark. Acts 2315, 2326. Act 765, however, amended, among other things, Act 25 of 1981 (Ex. Sess.), codified at A.C.A. §§26-75-201 et seq. (1987 and Cum. Supp. 1993), which is the statutory basis for the local tax commonly known as the "operating penny," receipts from which may be used to fund local services. A.C.A. § 26-75-217; seeHasha v. City of Fayetteville, 311 Ark. 460, 845 S.W.2d 500 (1993).
Arkansas Code Annotated § 14-164-338(a) now provides:
 (a) If a legislative body determines that a sales and use tax of one percent (1%) or less authorized by § 14-164-327 would, if levied for no longer than twenty-four (24) months, produce sufficient revenue to finance capital improvements of a public nature without resorting to a bond issue, the legislative body may dispense with the issuance of bonds, levy the tax for no longer than twenty-four (24) months, and appropriate the resulting revenues, subject to the Arkansas Constitution, Article 12, Section 4, paragraphs 2-4, provided:
 (1) A majority of the qualified electors of the county or municipality voting on the question at a general or special election shall have approved the tax and the purpose of the capital improvements; and
 (2) The revenues from the tax are expended solely for the purpose authorized by the electorate.
Because, in the interpretation of tax legislation, the express inclusion of one thing constitutes the exclusion of unnamed things, Leathers v.Active Realty, Inc., 317 Ark. 214, 876 S.W.2d 583 (1994), and because of the express language of A.C.A. § 14-164-338(a)(2) quoted above, it is my opinion that, insofar as A.C.A. § 14-164-338(a) is concerned, revenues from the tax may be expended only for capital improvements.
Amendment 62 leaves to the General Assembly the task of defining the term "capital improvements of a public nature." Ark. Const. amend. 62, § 1. The General Assembly supplied such a definition in the Local Government Bond Act. See A.C.A. § 14-164-303(a)(2) (Cum. Supp. 1993). The definition provides that the term is defined "for the purposes of Arkansas Constitution, Amendment 62, and this subchapter. . . ." A.C.A. §14-164-303 (emphasis supplied). It is my view, therefore, that the meaning of the term "capital improvements of a public nature," as used in A.C.A. § 14-164-338, must be determined by reference to A.C.A. §14-164-303.[3]
The definition of "capital improvements of a public nature" contained in § 14-164-303(a)(2), while relatively broad with respect to facilities that are generally thought of as capital items, cannot, in my view, be fairly read to include maintenance of public facilities. This conclusion is consistent with a case interpreting Ark. Const. amend. 13, now repealed, which permitted municipalities to issue bonds for, among other things, "the purchase of sites for construction of and equipment of . . . hospitals. . . ." In Neal v. City of Morrilton, 192 Ark. 450,92 S.W.2d 208 (1936), the court, noting that municipalities have only such powers are conferred upon them by the Constitution and statutes, held that an ordinance purporting to provide for the expenditure of bond proceeds for maintenance as well as construction of a hospital was void as exceeding the power delegated under Ark. Const. amend. 13.
If, then, a local government has any authority to spend tax revenues arising under A.C.A. § 14-164-338 and -327 on purposes other than capital improvements of a public nature, such authority must come from a source other than A.C.A. § 14-164-338(a).
According to its emergency clause, Act 36 of 1992 (1st Ex. Sess.) added subsections (b) through (d) to A.C.A. § 14-164-338 to clarify the use of existing law for the financing of capital improvements. Act of March 10, 1992, No. 36, emergency clause, 1993 Ark. Acts 4441, 4444. Subsection (b) of A.C.A. § 14-164-338 provides:
 (b) The portion of the tax authorized by § 14-164-327 which is not utilized under this section may be used as otherwise provided in this subchapter.
An examination of the Local Government Bond Act leads me to conclude that nothing therein would permit use of the tax revenues for maintenance purposes. While A.C.A. § 14-164-317(c) provides that excess tax collections shall be transferred to the issuer's general fund after the bonds are retired, it is clear that that provision addresses only advalorem taxes, not sales and use taxes. See Local Government Bond Act, section 8, 1985 Ark. Acts 1785, 1793-94.
The most recent amendment to the Local Government Bond Act also supports the proposition that pay-as-you-go tax revenues may not be spent for maintenance and other operations purposes. Act 64 of 1994 (2nd Ex. Sess) added a new A.C.A. § 14-164-340 (Spec. Pamp. 1994), which is a provision permitting pay-as-you-go financing of capital improvements for criminal justice purposes. While the new provision is similar in most respects to A.C.A. § 14-164-338, it has a subsection (g), not present in A.C.A. §14-164-338, that permits use of the tax revenues "to establish a trust fund whose income would provide operating funds" for the capital improvements financed with the tax revenues. The inclusion of this provision is, in my view, evidence that the General Assembly did not believe any such use was permissible under A.C.A. § 14-164-338.
Finally, it might be argued that the doctrine of Davis v. Waller,238 Ark. 300, 379 S.W.2d 283 (1964), Hollis v. Erwin, 237 Ark. 605,374 S.W.2d 828 (1964), and Railey v. City of Magnolia, 197 Ark. 1047,126 S.W.2d 273 (1939), would permit these funds to be expended for maintenance as being essential to the library, notwithstanding the lack of any specific authorization therefor. Certainly the county's library must be maintained. The cases cited, however, stand for the proposition that bond proceeds (and perhaps by analogy, tax revenues in lieu of bond proceeds) may be spent for tangible property that is essential to make the financed facility function as the sort of facility approved. In each, the acquisition of hospital equipment was challenged as being outside the authorization, but upheld because without appropriate equipment, a building is not a hospital and cannot function as such. It is my opinion that the doctrine is not applicable here, where the acquisition of tangible property is not involved and maintenance is not a necessary and indispensable part of the construction of a library. See Keeton v.Barber, 305 Ark. 147, 806 S.W.2d 363 (1991); Neal v. City of Morrilton,192 Ark. 450, 92 S.W.2d 208 (1936).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] It should be noted that A.C.A. § 14-164-338(a) provides that the legislative body may levy the tax provided the electors "shall have approved" the tax and the capital improvement projects. Thus the statute is clear that voter approval must occur prior to the levy, and that the voter approval does not itself constitute the levy.
[2] The title of Act 25 indicates that it authorizes local governments "to Finance Capital Improvements on a Pay-As-You-Go Basis without Issuing Bonds. . . ." Act of July 25, 1988 (4th Ex. Sess.), No. 25, title, 1989 Ark. Acts 2608, 2608.
[3] Although a note to A.C.A. § 14-164-338 by the Arkansas Code Revision Commission, of which the undersigned is a member, states that "references to `this subchapter' in [the remainder of the Local Government Bond Act] may not apply to this section," Act 25 expressly stated that it constituted an amendment to the Local Government Bond Act, and dictated that the language quoted above would be codified at A.C.A. § 14-164-338. Act of July 25, 1988 (4th Ex. Sess.), No. 25, § 1. In addition, A.C.A. § 14-164-338 is one of a number of sections specifically referred to in the Local Government Bond Act as being part of "this subchapter." A.C.A. § 14-164-305(a) (Cum. Supp. 1993). In my view, therefore, A.C.A. § 14-164-338 constitutes a part of the Local Government Bond Act and of A.C.A. title 14, chapter 164, subchapter 3, and should be interpreted in a manner consistent with the remainder of that Act, and terms used in A.C.A. § 14-164-338 should be given the meanings, if any, set forth for them in A.C.A. § 14-164-303.