Bryan L. Chessir, Prosecuting Attorney Judicial District 9th West Post Office Box 158 Nashville, Arkansas 71852
Dear Mr. Chessir:
I am writing in response to your request for my opinion on the following questions:
 (1) Does the Howard County Quorum Court have authority to appropriate the remaining monies from a hospital bond issue, approved on March 13, 2007, to purchase space in a Horizontal Property Regime?
 (2) Pursuant to the Horizontal Property Regime documentation, would the County acquire sufficient ownership in the property to satisfy the requirement that bond money be used to "acquire property"?
 (3) Under the Regime, the County would become co-tenants in the common areas of the property with other private entities. Accordingly, the bond money will be commingled with private investment. Does this arrangement violate the conditions under which bond money may be spent?
As background for these questions, you have offered the following information:
 On March 13, 2007, the voters of Howard County voted to approve a bond issue to finance the construction of a new Howard Memorial Hospital (the "Hospital"). . . . *Page 2 
Since that time, the Howard Memorial Hospital Foundation (the "Foundation") purchased a large tract of land upon which to construct the hospital. One portion of said tract was sold to the County to construct the hospital structure. Another portion of the tract was to Hernsberger, LLC, for construction of a doctors' office building.
 Following completion of the hospital structure, negotiations began between the Hospital — by way of its board of directors — and Hernsberger, LLC to house a physical therapy unit within the doctors' office building. To that end, the plans and construction of the doctors' office building were modified to that of a "Horizontal Property Regime." . . .
 In its proposal, the Hospital has requested that the remaining bond monies, in the amount of $334,000, be used to purchase an interest in the Horizontal Property Regime to house a physical therapy unit. In exchange therefore, the County will own said property in the regime and lease the same to the Hospital, as is the case with the main hospital structure.
It is my understanding that the physical therapy unit in the separate building would be owned and operated by the hospital exclusively for outpatient therapy services and not be subleased to any third party. This unit would comprise one of five "apartments" contained within a "horizontal property regime" as discussed below. The other "apartments" would be owned by individuals or entities other than the county.
RESPONSE
With respect to your first question, at issue is the voters' intent in approving the bond issue based upon the language of the levying ordinance and the ballot title, possibly clarified by extrinsic circumstances. Only a finder of fact acquainted with all of the circumstances could determine whether using the sales tax revenues for the proposed project would accord with the uses authorized by the voters. That said, in my opinion, a finder of fact might well conclude that a hospital's purchase and sole operation of a physical therapy unit contained in a building adjacent to *Page 3 
the main hospital facility would not contravene a vote authorizing the construction and operation of a hospital. Given the provisions of the Arkansas Code, I consider it immaterial that this purchase would be within the context of a horizontal property regime. Although your second question likewise raises questions of fact that I cannot definitively resolve, I believe the answer is in all likelihood "yes." With respect to your third question, assuming a court concluded that the county's purchase of a physical therapy unit was consistent with the voters' intent, I believe it would further conclude that the cost of the county's necessary ownership interest in common areas in and surrounding the building housing the unit was likewise permissible.
Question 1: Does the Howard County Quorum Court have authorityto appropriate the remaining monies from a hospital bond issue,approved on March 13, 2007, to purchase space in a HorizontalProperty Regime?
The concept of a "horizontal property regime" is authorized at A.C.A. §§ 18-13-101 through-120 (Repl. 2003). The subchapter at issue contemplates ownership of "apartments" by various individuals and/or entities within the regime. The term "apartments" is defined as follows:
 "Apartment" means a part of the property intended for residential, commercial, industrial, or any other type of independent use consisting of one (1) or more rooms or spaces occupying all or part of one (1) or more floors in a building or buildings of one (1) or more floors designated as an apartment in the master deed and delineated on the plans provided for in § 18-13-105[.][1]
The Code contains the following provisions regarding the ownership status of individuals or entities in possession of an apartment in a horizontal property regime:
 Once the property is submitted to the horizontal property regime, an apartment in the building may be individually conveyed and encumbered and may be the subject of ownership, possession, or sale and of all types of juridic acts intervivos or causa mortis as if it were sole and entirely independent of the other apartments in the *Page 4 
building of which it forms a part, and the corresponding individual titles and interests shall be recordable.[2]
 * * * An apartment owner shall have the exclusive ownership of his or her apartment and shall have a common right to a share, with the other co-owners, in the common elements of the property.[3]
In light of these provisions, I believe the county would exclusively own the physical therapy unit it purchased from the bond proceeds. As a necessary complement to its purchase of this unit, the county would further own an interest in "the common elements of the property."
With respect to the specific question of whether bond revenues might be used to purchase the physical therapy unit, the determinant will be what the voters intended in approving the bond issue — a question that must be answered by looking to the text of the levying ordinance and the ballot title. In this regard, your question implicates the fundamental constitutional precept that tax revenues levied for one purpose cannot be diverted to another. Ark. Const. art. 16, § 11. As my predecessor noted in Op. Att'y Gen. No. 2004-121:
 In determining the purpose of a tax, the Arkansas Supreme Court has stated:
 [I]t is to the title of the ordinance and the ballot title that the electors had the right to look to ascertain what they were asked to approve[.]
 Daniel v. Jones, 332 Ark. 489, 501, 966 S.W.2d 226 (1998), quoting Arkansas-Missouri Power Corp. v. City of Rector, 214 Ark. 649, 654, 217 S.W.2d 335, 337 (1949). *Page 5 
 Thus, the purpose of the sales tax, as stated in the levying ordinance and the ballot title, will be determinative of the manner in which the proceeds may be used. The court in Daniel v. Jones went on to state that "[t]he ballot title is the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer[.]" The "implication and ordinary meaning" of the ballot title will, generally, be controlling. Arkansas-Missouri Power Corp., supra. The court further noted in Maas v. City of Mountain Home, 338 Ark. 202, 208, 992 S.W.2d 105 (1999): "The ballot is the `final word' to the voters only in the sense that it is the last source of information, not in the sense that it is conclusive of the measure's effects. It must be read in conjunction with the levying ordinance."
As my predecessor further noted:
 It becomes apparent that only a finder of fact could determine whether using the sales tax revenues for the proposed projects referenced in your request would be consistent with the uses authorized by the voters. The language of the ordinance and the ballot title must be reviewed to determine whether the purpose of the tax is stated so as to encompass these projects. Consideration of extrinsic factors may also be necessary in case of ambiguity. The questions are local in nature and must be answered on the local level, perhaps with the assistance of local counsel.
I have been provided a copy of the ballot title but not the levying ordinance. Again, I am not a finder of fact and am not situated to divine the intention of voters in a local election. Nevertheless, I will offer some comments on the substance of the ballot title you have submitted.
The ballot title authorizes a bond issue "to finance all or a portion of the costs of the acquisition and construction of land and facilities for a new county hospital facility (the `Hospital'). . . ." What strikes me immediately is that the ballot title refers both to "facilities" and a "facility," raising the question of whether the voters might have assumed that they were approving the construction of a single unit or, as a possible alternative, a complex of the sort that the hospital building and the adjacent physical therapy unit would comprise. In this regard, I will note *Page 6 
that the Arkansas Supreme Court has declared that "`a hospital is more than a mere building of four walls and a roof.'"[4] Given that many hospitals are in fact complexes of buildings, I suspect that the term "facility" was not intended to be restrictive in the sense of authorizing only the construction of a single building. Again, however, the question of what was intended in the drafting and approval of this local ballot title is one of fact that should be addressed at the local level in light of all the attendant circumstances.
The remaining question is whether it would constitute a misuse of bond revenues to invest bond proceeds in the purchase and maintenance of certain common areas owned jointly with the cotenants of the facility that would house the physical therapy unit. Again, this question is one of fact that I cannot answer at this remove. The crucial question is what the voters intended in approving the tax. I will note, however, that so long as a finder of fact deemed the purchase of the physical therapy unit appropriate, the discharge of expenses necessarily related to that purchase would likewise appear appropriate. Compare Keeton v. Barber,305 Ark. 147, 151, 806 S.W.2d 363 (1991) (holding that the construction of a parking lot that was not essential to a hospital's operations could not be constructed using proceeds pledged to hospital construction).
Question 2: Pursuant to the Horizontal Property Regimedocumentation, would the County acquire sufficient ownership in theproperty to satisfy the requirement that bond money be used to"acquire property"?
As noted above, your question is one of fact that should be addressed by local counsel acquainted with all of the pertinent circumstances, including the documentation referenced in your request. However, as noted in my response to your previous question, assuming a court interpreted the levying ordinance and ballot title as authorizing the hospital to establish a separate physical therapy unit, I believe the court might well further conclude that the use of bond proceeds to finance the common areas in the facility housing the unit would likewise be permissible.
Question 3: Under the Regime, the County would becomeco-tenants in the common areas of the property with other privateentities. Accordingly, the bond *Page 7 money will be commingled with private investment. Does thisarrangement violate the conditions under which bond money may bespent?
As suggested in my response to you previous questions, assuming a court determined that the purchase and operation of the physical therapy unity were appropriate given the terms of the levying ordinance and the ballot title, I believe the investment in the common areas, as a necessary complement to the purchase, would be likewise appropriate. See Davis v. Waller,238 Ark. 300, 304, 379 S.W.2d 283 (1964) (interpreting former Ark. Const. amend. 17 to mean "bonds may be issued and the proceeds thereof spent for any type of equipment, furnishings and property necessary for or related to a functioning hospital").[5] However, I am neither authorized nor equipped to address the factual issues that would determine the answer to this or your previous questions.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/JHD:cyh
[1] A.C.A. § 18-13-102(1).
[2] A.C.A. § 18-13-111.
[3] A.C.A. § 18-13-112(a)(1).
[4] Davis v. Waller, 238 Ark. 300, 379 S.W.2d 283 (1964),Hollis v. Erwin,237 Ark. 605, 613, 374 S.W.2d 828 (1964) (holding that the voters could approve the construction and equipping of a hospital consisting of two units in one election).
[5] Compare Op. Att'y Gen No. 92-167 (opining that contributing to the maintenance of a public street leading to a hospital might fall within the ambit of a millage devoted to the maintenance of the hospital). Although Amendment 17 was repealed by Amendment 62, see Keeton,supra at 149 (discussing this repeal), I believe the principle discussed in my predecessor's opinion continues to apply. *Page 1